Eugenio Montes Viera, peticionario y apelante, *v.* Manuel V. Domenech y Gustavo Ramírez de Arellano, demandados y apelados.

No. 6161.—*Sometido:* Enero 17, 1935. *Resuelto:* Marzo 19, 1935.

*Diego O. Marrero,* abogado del apelante; *Hon. Procurador General Benjamin J. Horton* y *T. Torres Pérez, Subprocurador,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Se trata de un caso de *mandamus.* La petición fué negada finalmente por la corte de distrito y el peticionario apeló para ante este tribunal.

En la solicitud se alega, en resumen, que el peticionario era en julio 1, 1917, continuó siendo y es miembro del servicio civil clasificado de Puerto Rico; que en abril 19, 1928, por virtud de las disposiciones de la R. C. No. 13 aprobada en igual fecha, fué nombrado por el Comisionado del Interior oficinista encargado de la contabilidad e inspección de toda la gasolina importada, fabricada o producida en Puerto Rico para trabajar en la División de Arbitrios del Departamento de Hacienda con un sueldo de dos mil dólares anuales; que

el Comisionado del Interior en ningún momento ha separado, destituído ni suspendido al peticionario de su puesto que estuvo desempeñando hasta agosto 22, 1930, en que fué verbalmente notificado por el Jefe del Negociado de Arbitrios a nombre del Tesorero demandado de que "toda vez que había el peticionario cesado en su cargo por acción legislativa, no tenía nada que.hacer en el Departamento, y por consiguiente podía retirarse de la oficina"; que la actuación del Tesorero demandado se fundó en que "por la acción legislativa realizada en la Ley No. 12 aprobada el 21 de abril de 1930, el cargo del peticionario había sido suprimido porque los fondos del asfaltado, de los cuales se pagaban los emolumentos a que tenía derecho el peticionario, habían sido transferidos a los fondos generales del Tesoro"; que su cargo no fué abolido ni suspendido por acción legislativa; que posteriormente, en abril 24, 1931, fué aprobada la Ley No. 40 que dispuso que el sueldo del cargo que venía desempeñando el peticionario se pagara del producto del impuesto de la gasolina, cesando desde la aprobación de esa ley el obstáculo que alegaba el Tesorero demandado para dejar que el peticionario continuara en el desempeño de su cargo; que inmediatamente después de aprobada la Ley No. 40 de 1931, el peticionario pidió al Comisionado del Interior que se dirigiera al Tesorero "a fin de que éste procediera a darle posesión de su cargo y permitirle desempeñar las funciones del mismo, habiéndole contestado el Comisionado del Interior que el demandado Tesorero de Puerto Rico, Manuel V. Domenech, le había informado que no necesitaba de más personal en relación con la Ley No. 40 de 1931."; que el peticionario ha insistido con el Tesorero para que le dé posesión de su cargo y el Tesorero continúa negándose sin causa legal alguna, faltando así al claro deber que la ley le impone; que desde julio 1, 1931, ha dejado de desempeñar su cargo debido únicamente a la oposición arbitraria del Tesorero demandado, viéndose así privado de percibir su sueldo; que el Comisionado del Interior demandado es el funcionario que tiene el deber ministerial

de enviar al Auditor las nóminas correspondientes para que el peticionario pueda percibir sus salarios a partir de julio 1, 1931, y que el peticionario no tiene otro recurso rápido, adecuado y eficaz que el extraordinario de *mandamus* que establece.

La solicitud, que se archivó en mayo 23, 1932, termina suplicando, 1, que se ordene al Tesorero demandado que dé posesión inmediata al peticionario de su cargo de *clerk* encargado de la contabilidad e inspección de toda la gasolina que se importe, fabrique o venda en Puerto Rico, y le permita desempeñar las funciones del mismo, y 2, que se ordene al otro demandado Comisionado del Interior que proceda a expedir las nóminas correspondientes a los sueldos del peticionario desde julio 1, 1931, hasta la fecha en que se le dé posesión de su cargo.

Archivada la solicitud, la corte expidió una orden para mostrar causa y en el día señalado comparecieron los demandados y se opusieron al libramiento del auto, por los siguientes motivos: "(1) Porque existe otra acción pendiente entre las mismas partes y por la misma causa. (2) Porque en la petición de *mandamus* presentada existe identidad de partes demandante y demandada, y la acción ejercitada es substancialmente igual al caso de *mandamus* entre las mismas partes, fallado por este Tribunal de Distrito en 26 de marzo de 1931 declarando sin lugar la petición de *mandamus*, y apelado por el peticionario al Tribunal Supremo en donde recientemente el peticionario ha radicado la transcripción de autos y el alegato, en apelación. (3) Porque habiendo el peticionario utilizado el recurso de apelación contra la sentencia de marzo 26, 1931, la interposición de una nueva petición de *mandamus*, en la que los hechos son los mismos, ante el propio tribunal que dictó la sentencia apelada, equivaldría a una segunda revisión de dicha sentencia, por el mismo tribunal que resolvió el anterior *mandamus*, sin haber renunciado el peticionario-apelante al recurso de apelación ya establecido. (4) Porque los hechos del anterior *mandamus* y los del presente son los

mismos pues no han podido variar, no dando derecho nuevo alguno al peticionario el mero hecho de haber sido aprobada la Ley No. 40 en abril 24, 1931, a que se refiere su solicitud, después de interpuesta su apelación. (5) Porque actualmente no está cubierta la plaza que el peticionario solicita, por persona alguna. (6) Porque siendo una nueva petición de *mandamus* los demandados, de acuerdo con la vigente ley han debido ser nuevamente requeridos por el peticionario, actuación que no consta haber sido practicada en ninguna forma por el demandante después del fallo apelado. (7) Porque el objeto primordial de la Ley No. 40 es principalmente el de imponer una contribución de 7 centavos a cada galón de gasolina que se introduzca o venda en Puerto Rico, y el disponiéndose de la Sección 2 relativa al *clerk* encargado de la contabilidad e inspector de gasolina no confiere ningún derecho nuevo al peticionario sino que es meramente declarativo de que de estar alguna persona desempeñando los deberes como tal *clerk* su sueldo continuara pagándose del producto de este impuesto, y no que por ello tenga que cubrirse necesariamente la plaza. (8) Porque el peticionario ha abandonado el derecho que alega tener de conformidad con la Ley No. 40 de marzo 4, 1931, en vigor desde julio 1, 1931, al dejar transcurrir el largo período de tiempo de 10 meses sin haber establecido la acción que últimamente ha interpuesto.''

Oyó la corte a ambas partes y, como dijimos al principio, negó finalmente la petición. Fundó su sentencia, que dictó en julio 14, 1932, como sigue:

"La Resolución Conjunta No. 13 (Leyes de 1928, pág. 731) que invoca el peticionario tiene por fin, según su título, 'autorizar al Tesorero y al Auditor de Puerto Rico a pagar del fondo para el asfaltado de las carreteras de Puerto Rico creado por la ley número 8 aprobada el 11 de mayo de 1927, el sueldo del empleado encargado de la contabilidad e inspección de toda la gasolina que se importe, fabrique y produzca en Puerto Rico y para otros fines.' No crea, pues, esta ley cargo alguno, sino que autoriza el pago del sueldo de un

empleado, de un fondo determinado. La Ley Número 8 de 1927 (Leyes de 1927, pág. 421) enmienda el título de la ley No. 52 de 1925 y las secciones 1 y 3 de la misma, pero no crea empleo o cargo alguno. La ley No. 12 de 1930 (Leyes de 1930, pág. 159) enmienda el título y las secciones 1 y 3 de la ley número 8 de 1927 y en esta ley tampoco se crea cargo ni se fija sueldo alguno. Por último la ley número 40 de 1931 (Leyes de 1931 pág. 361) expresamente deroga la ley número 12 de 1930, impone una contribución sobre la gasolina, y dispone 'que el sueldo del *clerk*, encargado de la contabilidad e inspector de gasolina, creado por la resolución conjunta número 13, aprobada en abril 19, 1928, que se venía pagando del fondo especial para el asfaltado para las carreteras de Puerto Rico continuará pagándose del producto de este impuesto.' Como se ve, no crea esta ley deber ministerial, regulado o imperativo a ejecutar por parte del demandado. La teoría del demandante parece ser que una vez que él fué nombrado para el cargo tiene siempre derecho al mismo, y el Tesorero viene obligado a reinstalarlo en él como un deber imperativo o ejecutivo. Invoca para ello la teoría de que el sueldo es una derivación incidental del cargo, y que éste puede existir sin que se le provea compensación. Tal teoría en nada afecta el problema planteado en este recurso. El mandamus es un procedimiento judicial dirigido a poner en vigor derechos legales claros, y a cumplir deberes ejecutivos que sean impuestos por la ley como parte de la función u oficio del funcionario a quien se dirija el auto. Pero en ninguna de las leyes examinadas por nosotros, se impone al Tesorero el deber ejecutivo de reponer en su empleo al peticionario, el que salió del mismo, no por la actuación del demandado (como así se desprende de la propia petición) sino porque se enmendó la ley a virtud de la cual se autorizaba el pago de su sueldo, y lo que es más, se derogó la misma completamente por la sección 3 de la ley número 12 de 1930. Cierto es que la ley número 40 de 1931 deroga expresamente la número 12 de 1930, pero en este caso es de aplicarse el principio de interpretación estatutaria contenido en el artículo 6 del Código Civil que dice que la derogación de una ley derogatoria no restablece la primitiva ley derogada. Entendiéndolo así el legislador insertó el *disponiéndose* que aparece en la sección 2 de la ley número 40 de 1931, pero tal disposición sólo tiene el efecto de revivir el precepto que autorizaba el pago del sueldo del empleado del Fondo especial para el asfaltado, y más bien es una disposición de carácter académico, porque el producto total de lo recaudado por virtud de la mencionada Ley No. 40, y desde julio 1 de 1931 a junio 30 de

1932, ingresaría en los fondos generales del tesoro de Puerto Rico, por estar considerado como un impuesto sobre renta interna. No siendo, pues, un fondo especial, el Tesorero tiene plenas facultades por la ley para recaudar el impuesto sobre la gasolina, lo mismo que cualquiera otro impuesto, y utilizar para ello los empleados de su departamento encargados del cobro de las rentas internas. El precepto de que el pago del sueldo del *clerk* encargado del impuesto se haga de cierto fondo, es mandatorio para el Tesorero, si existe el empleado, pero no establece obligación o deber imperativo a cumplir para con el demandante, que no venía desempeñando el cargo cuando se aprobó la ley.

"Y como la defensa levantada es aquivalente a que la petición no expone hechos constitutivos de causa de acción y tal petición no es enmendable, se declara no haber lugar a expedir el auto de *mandamus* solicitado."

No conforme el peticionario apeló, radicando la transcripción de los autos en septiembre 14, 1932. Fué entonces solicitando prórrogas para su alegato archivándolo al fin en junio 3, 1933. Se señaló la vista del recurso para abril 19, 1934. En abril 10, ambas partes estipularon solicitar la suspensión de la vista hasta nuevo señalamiento que se hizo para enero 17, 1935, en cuya fecha quedó el caso definitivamente sometido a este tribunal.

En su alegato señala el apelante la comisión de seis errores, cometidos a su juicio por la corte sentenciadora, al resolver: 1, que por la R. C. No. 13 de 1928, no se creó cargo alguno; 2, que la Ley No. 12 de 1930 derogó la R. C. No. 13 de 1928; 3, que es aplicable a este caso el artículo 6 del Código Civil; 4, que la sec. 2 de la Ley No. 40 de 1931, reviviendo el sueldo del cargo, es académica; 5, que el Tesorero no venía obligado a dar posesión del cargo al peticionario; y 6, que la petición no expone hechos constitutivos de causa de acción, declarándola, por tal motivo, sin lugar.

■ No hay duda de que la resolución de este caso podría dictarse con mayor seguridad de acierto de haber seguido adelante, permitiéndose a los demandados probar las defensas de abandono de su cargo por parte del peticionario y de

haberse decidido previamente su caso por sentencia dictada por la corte de distrito en marzo 26, 1931. Eso no obstante, creemos que la sentencia debe confirmarse porque los hechos alegados no demuestran con la claridad que la ley y la jurisprudencia exigen en casos de *mandamus*, el derecho del peticionario.

Puede aceptarse que por la R. C. No. 13 de 1928, Leyes de 1928, p. 731, se creó el cargo para el que fué nombrado el peticionario el 19 de abril de 1928, pero no que la creación lo fuera de modo independiente y permanente. Basta examinar el título y los por cuantos de la resolución para concluir que su existencia depende de la de la Ley No. 8 de 1927, Leyes de 1927, p. 421. Parece conveniente transcribirlos. Dicen:

"RESOLUCIÓN CONJUNTA—Para autorizar al Tesorero y al Auditor de Puerto Rico a pagar del fondo para el asfaltado de las carreteras de Puerto Rico creado por la Ley No. 8 aprobada el 11 de mayo de 1927, el sueldo del empleado encargado de la contabilidad e inspección de toda la gasolina que se importe, fabrique y produzca en Puerto Rico, y para otros fines.

"POR CUANTO, la Ley No. 8 aprobada el día 11 de mayo de 1927 impone una contribución de cuatro (4) centavos por cada galón de gasolina que se venda o consuma o que de otro modo se disponga para el consumo en Puerto Rico y destinar dicho producto de la contribución al asfaltado de las carreteras insulares;

"POR CUANTO, para cobrar este impuesto se hace necesario en la Tesorería de Puerto Rico pagar un empleado que se dedique única y exclusivamente a llevar la contabilidad y la inspección de toda la gasolina que se importe, fabrique o produzca en Puerto Rico."

La autorización para el pago del sueldo lo fué en los siguientes términos: "Sección 2.—Se autoriza al Tesorero y al Auditor de Puerto Rico *para que paguen del fondo para el asfaltado* de las carreteras insulares. . ." (Itálicas nuestras.) Y así, cuando se aprobó la Ley No. 12 de 1930, Leyes de 1930, p. 161, enmendando la Ley No. 8 de 1927, de tal manera que el fondo para el asfaltado desapareció, destinándose lo recaudado a virtud del impuesto sobre gasolina du-

rante el año 1930–31 *a los fondos ordinarios del Tesoro de Puerto Rico* y a partir del 1º. de julio 1931 *a la construcción y conservación de las carreteras y puentes insulares,* (itálicas nuestras) no sólo quedó sin asignación el cargo, si que sin justificación su existencia. La Ley No. 12 de 1930 contiene una cláusula derogatoria que dice: ''Sección 3.—Toda Ley o parte de ley que se oponga a la presente queda por ésta derogada.''

Y resulta aún más clara la conclusión a que hemos llegado si se toma en consideración que el fondo de asfaltado era un fondo especial creado por la sección segunda de la Ley No. 52 de 1925, Leyes de 1925, p. 297, con la cual estaba conectada la No. 8 de 1927, en los siguientes términos:

''Sección 2.—El dinero que recaude el Tesoro de Puerto Rico por concepto del impuesto creado por esta Ley, será depositado en un fondo especial que se denominará 'Fondo para el asfaltado de las carreteras de Puerto Rico,' y se aplicará única y exclusivamente al asfaltado de las carreteras insulares.''

La R. C. de 1928, en que basa su derecho el peticionario, cayó con el fondo especial de asfaltado que le daba vida. Ingresado el producto del impuesto de la gasolina en los fondos generales, fué correcta la actitud asumida por el Tesorero. El trabajo en relación con el mismo podía y debía realizarse por los empleados regulares de su departamento.

■ Siendo ésas las circunstancias del caso, la situación que el mismo presenta es distinta a la de aquélla en que se estableció la jurisprudencia citada por la parte apelante en su alegato que sostiene que el salario es una mera incidencia del cargo, que no constituye parte del mismo y que no es indispensable a su existencia. Aquí hubo más que la mera falta de asignación para cubrir el sueldo de un cargo permanente.

■ ¿Qué efecto produce el disponiéndose de la sección 2 de la Ley No. 40 de 1931 (pág. 361)?

Esa ley tiene vida por sí sola. No está conectada como lo

están las de 1925, 1927 y 1930 citadas que se enmiendan entre sí. Lo está por razón de la materia, desde luego. Comienza imponiendo por sí misma como si se hiciera por vez primera, el impuesto sobre gasolina, que se fija en siete centavos por galón, y luego prescribe por su sección 2:

"El producto total de lo recaudado por virtud de esta Ley desde julio 1 de 1931 a junio 30 de 1932, ingresará en los fondos generales del Tesoro de Puerto Rico, y después de julio 1 de 1932 el producto total de lo que se recaudare a virtud de esta contribución se dedicará, con la aprobación de la Comisión Económica de la Legislatura y del Gobernador de Puerto Rico, a desarrollar el plan general de caminos municipales preparado por el Departamento del Interior y aprobado por la Asamblea Legislativa de Puerto Rico; . . ."

Siguen dos "disponiéndose," el último de los cuales dice:

"Que el sueldo del *Clerk* Encargado de la Contabilidad e Inspector de Gasolina, creado por la Resolución Conjunta No. 13, aprobada en abril 19, 1928, que se venía pagando del Fondo Especial para el Asfaltado para las Carreteras de Puerto Rico continuará pagándose del producto de este impuesto."

Claro es que aporta un nuevo elemento para la resolución del problema. Es cierto que se presta a una interpretación favorable al derecho invocado por el peticionario, pero todas las circunstancias bien consideradas, creemos que como dijo la corte sentenciadora sólo tiene el efecto de revivir la autorización para el pago del sueldo, no el derecho del peticionario al cargo. Si el peticionario hubiera estado desempeñando el cargo cuando comenzó a regir el disponiéndose de la Ley No. 40 de 1931, su sueldo pudo haberse hecho efectivo por el Tesorero, pero como no lo venía desempeñando, lo dispuesto resulta en verdad académico en cuanto a él a menos que obtenga un nuevo nombramiento. Y éste no lo solicitó, ni lo ha pedido en el pleito. Parte de la base de que su primitivo nombramiento quedó en pie. Y ya hemos visto que no fué así.

■ Además, si bien, como dijimos, algunos de los motivos fundamentales alegados por los demandados para opo-

nerse a la expedición del auto, no pueden tomarse en consideración por no haberse llegado al trámite de la prueba, surge de la propia solicitud que el peticionario acudió demasiado tarde a los tribunales para que pueda reconocérsele su derecho al auto extraordinario de *mandamus* que solicita. Si no existió pleito anterior alguno, entonces resulta que dejó transcurrir desde agosto 1930 en que cesó en el desempeño de su cargo hasta mayo 23, 1932, en que archivó su solicitud, cerca de dos años, y si se toman como punto de partida la fecha de la aprobación de la Ley No. 40 de 1931, o sea el 24 de abril de 1931, o la en que empezó a regir, esto es, el 1°. de julio de 1931, habría transcurrido más de un año en el primer caso y más de diez meses en el segundo.

*Debe confirmarse la sentencia recurrida.*

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA

En la opinión de la mayoría se dice que "puede aceptarse que por la Resolución Conjunta No. 13, de 1928, Leyes de 1928, pág. 731, se creó el cargo para el que fué nombrado el peticionario el 19 de abril de 1928, pero no que la creación lo fuera de modo independiente y permanente." Acerca de la creación y existencia del cargo no puede haber duda. Para la creación de un cargo no es necesario que la Legislatura declare en palabras expresas su pensamiento. El uso de cualquier lenguaje que evidentemente demuestre la intención legislativa es suficiente para que el cargo se considere creado.

La Resolución Conjunta No. 13, aprobada en 1928, expresa la necesidad de pagar un empleado en Tesorería que se dedique única y exclusivamente a llevar la contabilidad y la inspección de toda la gasolina que se importe, fabrique o produzca en Puerto Rico, y en su artículo primero autoriza al Comisionado del Interior a nombrar un empleado con cargo a este fondo, quien llevará a cabo el trabajo mencionado. En su artículo segundo dicha Resolución autoriza al Tesorero y al Auditor de Puerto Rico para que paguen del

fondo para el asfaltado de las carreteras insulares $2,000 anuales al empleado que nombre el Comisionado del Interior para llevar la contabilidad e inspeccionar toda la gasolina que se importe, fabrique o se venda para el consumo, o que de otro modo se disponga de ella en Puerto Rico. Las palabras del estatuto bastan para determinar la creación del cargo referido. La jurisprudencia es clara sobre este particular. En el caso de *Ryan* v. *Riley*, 65 Cal. App. 181, 223 Pac. 1027, la corte, examinando una disposición no tan precisa y categórica como la que estamos discutiendo, se expresó en los siguientes términos:

"¿Crea la primera subdivisión de la sección 30 de la Ley sobre Vehículos de Motor el cargo de funcionario de tráfico? La referida sección dice así:

" 'El jefe de la división de vehículos de motor queda por la presente autorizado para nombrar todos los inspectores estaduales en general y además un número suficiente de inspectores del estado y funcionario de tráfico para hacer efectivas las disposiciones de esta ley en cada uno de los condados del estado,' etc.

"A primera vista, podría aparecer dudosa la creación del cargo referido, pero si se examina e investiga con mayor amplitud, parece claro que el lenguaje usado trasmite e incorpora la intención de la legislatura de dar existencia a dicho cargo, a pesar de que las funciones del mismo han de ser solamente deducidas de los términos generales de la sección, o sea de las palabras 'para hacer efectivas las disposiciones de la Ley de Vehículos de Motor' y de que el número de personas ejerciendo las funciones de tal cargo o que están para ejercerlo no ha sido específicamente determinado.

. . . . . . . . . . .

"No es necesario ningún lenguaje especial para la creación de un cargo público. Es bastante si la intención de la Legislatura se manifiesta así por el lenguaje usado. Childs v. State, 4 Okl. Cr. 474, 113 Pac. 545, 33 L.R.A. (N. S.) 563. Que el lenguaje usado en la primera subdivisión de la sección 30 de la ley sobre Vehículos de Motor manifiesta con suficiencia la intención de la legislatura para crear el cargo de funcionario de tráfico está sostenido por el caso de Scott v. Boyle, 164 Cal. 321, 128 Pac. 941, en que una ley de la legislatura aprobada en marzo 18 de 1911 se consideró bastante para

crear la posición de sellador de pesas y medidas. La sección 4a. de dicha ley dice así:

" 'Los respectivos condados, ciudades incorporadas, pueblos incorporados, y ciudades y condados del estado, quedan por la presente autorizados para nombrar selladores (*sealers*) de pesas y medidas.'

"Podríamos ofrecer otros ejemplos, pero nos parece que con los que hemos citado anteriormente es bastante."

No podemos aceptar el criterio expuesto en la opinión de la mayoría de que la existencia de ese cargo se hiciese depender de la Ley No. 8 de 1927, Leyes de 1927, pág. 421. El fondo para el asfaltado de las carreteras insulares fué creado por el artículo segundo de la Ley No. 52 de 1925, "para imponer una contribución de 2 centavos a cada galón de gasolina, etc." El referido artículo dice que el dinero recaudado por el Tesorero de Puerto Rico por concepto del impuesto creado por la ley, será depositado en un fondo especial que se denominará "Fondo para el asfaltado de las Carreteras de Puerto Rico", y se aplicará única y exclusivamente al asfaltado de las carreteras insulares. Esta ley fué enmendada por la Ley No. 8 de 1927, que aumentó el impuesto sobre la gasolina a 4 centavos por galón. En 1928, o sea tres años después de creado el fondo especial, se creó el cargo para llevar la contabilidad y la inspección de toda la gasolina que se importe, fabrique o produzca en Puerto Rico. Si se examina cuidadosamente la resolución conjunta No. 13, de 1928, se verá que la existencia del fondo de la gasolina no es la que determina la creación del cargo, sino la necesidad de designar un empleado en la Tesorería Insular que se encargue de cobrar el impuesto de la gasolina y se dedique única y exclusivamente a llevar la contabilidad y la inspección de toda la gasolina que se importe, fabrique o produzca en Puerto Rico. Es evidente que esta necesidad nada tiene que ver con el destino que se dé al dinero recaudado. Para los efectos del cobro, de la contabilidad y de la inspección, lo mismo da que el dinero recaudado vaya a un fondo especial o que se confunda con los fondos generales del Tesoro Insular. La

necesidad de esta labor no desaparece por el hecho de que el producto del impuesto no se destine a formar parte de un fondo particular. El ingreso de la contribución en los fondos ordinarios del Tesoro no puede tener la trascendencia de suprimir el cargo. Fué en 1930 que el impuesto sobre la gasolina pasó a formar parte de los fondos ordinarios del Tesoro en virtud de la Ley No. 12, que enmendó la Ley No. 8, aprobada en mayo 11 de 1927, enmendatoria a la vez de la Ley No. 52 de 1925. De acuerdo con esta ley "el producto total de lo recaudado desde julio 1, 1930, a junio 30, 1931, ingresará en los fondos ordinarios del Tesoro de Puerto Rico, y después de julio de 1931 el producto total de lo recaudado se pondrá a disposición del Comisionado del Interior para ser empleado por éste en la contrucción, reparación y conservación de las carreteras y puentes insulares, . . . disponiéndose que del importe total de esta contribución ingresarán $30,000 anualmente, a partir del año económico 1930–31 al fondo de pensiones de la Policía Insular, etc.''

Como se ve, la contribución sobre la gasolina subsiste y el producto total de lo recaudado continúa controlado por el Comisionado del Interior, para ser empleado por éste en la construcción, reparación y conservación de las carreteras y puentes insulares. Nada dice la ley que antecede acerca del cargo creado para la contabilidad e inspección de la gasolina, pero en 1931 la Legislatura aprobó la Ley No. 40, que aumenta la contribución sobre la gasolina a 7 centavos por galón y deroga la ley No. 12, aprobada en abril 21 de 1930, y dispone que el sueldo del empleado encargado de la contabilidad e inspección de gasolina, creado por la resolución conjunta No. 13, aprobada en abril 19 de 1928, que se venía pagando del fondo especial para el asfaltado de las carreteras de Puerto Rico, continuará pagándose del producto de este impuesto.

Esta ley últimamente aprobada pone de relieve con toda claridad cuál fué la intención de la Legislatura con respecto a la creación del cargo referido y a la continuación del mismo.

El legislador habla del cargo creado en virtud de la resolu-- ción conjunta, aprobada en 1928, y dispone que se continúe pagando al empleado que desempeña dicho cargo del producto de la contribución sobre la gasolina. El estudio de toda esta legislación desde sus comienzos demuestra claramente que este cargo jamás ha sido abolido, si es que le hemos de dar algún efecto a la letra de la ley y al pensamiento del legislador. Se trata de estatutos *in pari materia,* que deben ser conjuntamente interpretados. En el caso de *U. S.* v. *Freeman,* 3 How. 562, 565, 11 L. Ed. 727, la Corte Suprema de los Estados Unidos se expresa así:

"La regla correcta de interpretación es que si diversos estatutos se refieren a la misma cosa, deben ser tomados todos en consideración al interpretar uno cualquiera de ellos, y es una regla establecida de ley que todas las leyes *in pari materia* deben ser tomadas conjuntamente como si se tratare de una sola ley. (Doug. 30; 2 T. R. 387, 586; 4 Maule & Selw. 210.) Si algo de lo contenido en un estatuto posterior cae dentro de la razón del estatuto anterior, se interpretará en el sentido de que cae dentro del significado de dicho estatuto; Lord Raym. 1028; y si de un estatuto posterior *in pari materia* puede colegirse qué significado dió la legislatura al contexto de un estatuto anterior, ésto equivaldrá a una declaración legislativa de su significado y determinará la interpretación que debe dársele al primer estatuto. Morris v. Mellin, 6 Barn. & C., 454; 7 Id. 99. Doquiera que las palabras de un estatuto son dudosas u obscuras, debe acudirse a la intención legislativa para determinar el significado de las palabras usadas. Wimbish v. Tailbois, Plowd., 57. Algo que cae dentro de la intención de los redactores del estatuto, está dentro del estatuto de igual modo que si su contexto así lo expresara. Zouch v. Stowell, Plowd., 366. Estas citas solamente son distintas ilustraciones de la regla de que el significado legislativo puede extenderse más allá de las palabras precisas usadas en la ley, a base de la razón o motivo que indujo a la legislatura a actuar, del fin que tuvo por mira o del propósito que tuvo en mente—siendo la limitación de la regla que para extender el significado a cualquier caso no incluído en las palabras del estatuto, debe demostrarse que el caso cae dentro de la misma razón que movió al legislador y no tan sólo dentro de una razón similar. En efecto, esta corte en repetidas ocasiones ha actuado sobre esta regla y en los tomos en que

aparecen publicadas sus decisiones pueden hallarse casos interpretando tal regla, como por ejemplo, los casos que han sido citados de las decisiones de las cortes inglesas. En 4 Dall., 14, se dice: 'Al ser descubierta, debe prevalecer la intención legislativa, no obstante cualquier regla de hermenéutica en sentido contrario que pueda haber sido declarada por leyes anteriores.' ''

Para nosotros es claro que el cargo no ha quedado abolido por el hecho de haber ingresado el producto del impuesto sobre la gasolina en los fondos ordinarios del Tesoro Insular. Las derogaciones tácitas no son favorecidas. Para que un cargo quede abolido, la intención de abolir debe ser clara y manifiesta. 46 C. J., párrafo 30, pág. 935.

La legislatura pudo por inadvertencia haber incurido en la omisión de no hacer constar expresamente que el sueldo del empleado encargado de la contabilidad e inspección de la gasolina se pagaría como hasta entonces del producto del impuesto, que continuaba cobrándose aunque sin constituir un fondo especial. La omisión fué subsanada al año siguiente, es decir, en la primera oportunidad que para hacerlo tuvo la Asamblea Legislativa. La Ley de 1931 no deja lugar a dudas sobre este particular. Además, un cargo puede existir aunque no se le haya asignado compensación. *La Rocca* v. *Flynn*, 177 N.E. 290. El salario es una mera incidencia del cargo, no constituye parte del mismo y no es indispensable a su existencia. *Childs* v. *State*, 4 Okla. Cr. 474, 113 Pac. 545; 22 R.C.L., pár. 217, págs. 525, 526. La legislatura, al decir en 1931 que el cargo creado por la Resolución Conjunta No. 13, aprobada en 1928, continuará pagándose del producto del impuesto sobre la gasolina, parte de la base de que dicho cargo no ha sido abolido. La asignación es específica tanto en cuanto al propósito como en cuanto a la cuantía. Las palabras de la ley demuestran claramente que la omisión fué accidental, sin intención alguna, y que se incurrió en ella por inadvertencia u olvido.

En el caso de *Campbell* v. *Schmidt*, 219 N.Y.S. 26, se trataba de una solicitud de *mandamus* para reinstalar al peti-

cionario en las funciones de Jefe de la Penitenciaría. Se alegó que dicha plaza había sido abolida por haberse eliminado del presupuesto la partida para cubrir el salario del cargo del peticionario. No apareció de la prueba que se hubiese dictado resolución alguna para abolir el referido cargo. La corte, resolviendo la cuestión planteada, se expresó así:

"Se establece en esta petición por los procedimientos de la Junta de Superintendentes que no se adoptó ninguna resolución por dicho organismo aboliendo formalmente el cargo de Jefe de la Penitenciaría del peticionario, que el Comité de Finanzas de dicha Junta no informó que tal cargo hubiese sido abolido, que la Junta de Superintendentes, en su presupuesto para el año 1926 omitió incluir una partida para cubrir el sueldo del peticionario, sin hacer mención de su cargo. Tales hechos han sido admitidos. La única cuestión que se ofrece a nuestra consideración es la siguiente: ¿Ha quedado abolido el referido cargo por el hecho de que el presupuesto de 1926 haya dejado de mencionar específicamente el cargo de Jefe de la Penitenciaría y de asignar una cantidad para cubrir el sueldo del peticionario?

"El abogado no ha podido citar ninguna autoridad sobre esta cuestión. Se ha dicho que para abolir un cargo la intención de abolir de parte de la autoridad competente debe ser clara. 29 Cyc. 1368. La simple omisión de incluir el cargo en el presupuesto no parece ser una clara expresión de una intención de abolir el cargo. No implica necesariamente que tal omisión en el presupuesto fué intencional; puede haber sido accidental y sin intención. Decir que la simple omisión para disponer el pago del salario de un cargo público equivale a la abolición del mismo, está desprovisto de toda razón y de toda lógica; ciertamente no es una clara expresión de una intención de abolir el cargo."

Repetimos que aún en la hipótesis de que pudiese haber alguna duda acerca de la existencia y continuación del cargo que desempeñara el peticionario desde que fué creado, esta duda ha debido quedar completamente desvanecida por la última ley de la Asamblea Legislativa que dispone que *"el sueldo del clerk encargado de la contabilidad e inspección de gasolina, creado por la Resolución Conjunta No. 13, aprobada en abril 19, 1928, que se venía pagando del fondo especial*

*para el asfaltado para las carreteras de Puerto Rico, conti-
nuará pagándose del producto de este impuesto.''*

Opinamos que este caso ha debido ser devuelto a la corte inferior para procedimientos ulteriores, a fin de que la parte demandada hubiese tenido la oportunidad de aportar prueba sobre las defensas de abandono y de *litis pendencia*.