EDUARDO RIVERA EGOZCUE, peticionario y apelante, *v.* ANTONIO FERNÓS ISERN, COMISIONADO DE SANIDAD, sustituído por su sucesor en el cargo, DR. JUAN A. PONS, querellado apelado.

Núm. 9312.—*Sometido:* Diciembre 10, 1946. *Resuelto:* Febrero 14, 1947.

*Rafael A. Gònzález,* abogado del apelante; *Hon. Procurador General Interino Luis Negrón Fernández* y *J. Rivera Barreras, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Eduardo Rivera Egozcue ocupó hasta el 14 de diciembre de 1942 una plaza de carpintero, comprendida en el Servicio Civil Clasificado, en el Sanatorio Insular y la cual había sido creada por el Comisionado de Sanidad dentro del presupuesto especial del *Trust Fund* de la Lotería de Puerto Rico asignado al Sanatorio Insular. Dicha plaza fué abolida por el Comisionado en dicha fecha. Alegando que había sido destituído ilegalmente Rivera inició un procedimiento de *mandamus* contra el Comisionado de Sanidad en la Corte de Distrito de San Juan el día 8 de junio de 1944 con el fin de ser repuesto en su cargo.

Después de celebrarse un juicio en los méritos, la corte inferior se dió cuenta de que en la petición no se había alegado que el peticionario había requerido al Comisionado para que lo repusiera en el cargo y suspendió la vista y concedió permiso al peticionario para que radicara una petición enmendada. Así lo hizo y el querellado contestó. Entonces las partes estipularon someter el caso por la prueba ya practicada y además el peticionario sometió copia de la carta que le dirigió al Comisionado de Sanidad el 26 de abril de 1944 solicitando ser repuesto en su cargo y una carta del Comisionado negándose a reponerlo por haberse abolido la plaza. El querellado se opuso por escrito a la admisión de dichas cartas y alegó que el peticionario había incurrido en *laches* según aparecía de la fecha de la carta. El peticionario no contestó la oposición del querellado.

La corte inferior, sin hacer ningún pronunciamiento directo en cuanto a si admitía o no las cartas como prueba, de hecho las admitió pues se refiere a ellas en su opinión y a base del requerimiento hecho por el peticionario al Comisionado de Sanidad en abril de 1944 llegó a la conclusión de que en efecto el peticionario había incurrido en laches y resolvió el caso diciendo:

". . . El demandante fué separado en diciembre 14 de 1942 Desde aquella fecha nada hizo para que se le repusiera. No fué hasta el 26 de abril de 1944, que por primera vez se dirigió al demandado reclamando sus derechos. Permaneció inactivo, dormido, por más de 16 meses. El demandado ha utilizado a otra persona, a Lanzó, para que durante todo ese tiempo realizara el trabajo del peticionario. Éste, no sólo reclama ahora que se le designe para realizar de aquí en adelante los trabajos de carpintería del Sanatorio Insular sino que también pide que se le pague todo lo cobrado por Lanzó. Tomando en cuenta todas las circunstancias concurrentes estimamos que ha habido *laches*. No se nos ha dado explicación alguna por la tardanza injustificadamente habida. Copiamos de *Montes* v. *Domenech, Tesorero,* 48 D.P.R. 269:

" 'Además, si bien, como dijimos, algunos de los motivos fundamentales alegados por los demandados para oponerse a la expedición

del auto, no pueden tomarse en consideración por no haberse llegado al trámite de la prueba, surge de la propia solicitud que el peticionario acudió demasiado tarde a los tribunales para que pueda reconocérsele su derecho al auto extraordinario de *mandamus* que solicita. Si no existió pleito anterior alguno, entonces resulta que dejó transcurrir desde agosto 1930 en que cesó en el desempeño de su cargo hasta mayo 23, 1932, en que archivó su solicitud, cerca de dos años, y si se toman como punto de partida la fecha de la aprobación de la Ley núm. 40 de 1931, o sea el 24 de abril de 1931, o la en que empezó a regir, esto es, el 1°. de julio de 1931, habría transcurrido más de un año en el primer caso y más de diez meses en el segundo.'

''Véase además *Urdaz* v. *Padín, Comisionado*, 48 D.P.R. 306, *State ex rel. Ball* v. *Knoxville*, 145 A.L.R. 762 y nota anexa.''

El peticionario apeló y en este recurso alega que la corte sentenciadora ''erró al declarar sin lugar la petición de mandamus en este caso basando su decisión única y exclusivamente en que el peticionario apelante fué moroso en ejercer su derecho, esto es, porque el peticionario incurrió en laches.''

Arguye el apelante que ''Sin dársele la oportunidad al peticionario apelante a explicar por qué no recurrió a los tribunales, la Corte resolvió que . . . incurrió en laches por el mero hecho de que aparece de los autos que éste cesó en su empleo el día 15 de diciembre del año 1942 y solicitó la reposición de su puesto el día 26 de abril de 1944. . . .''y que ''debió habérsele concedido la oportunidad de justificar su tardanza. . .''.

No tiene razón el apelante. Él tuvo amplia oportunidad de explicar su tardanza. Como hemos dicho, el juicio se había celebrado y fué a su terminación que surgió la cuestión de que en la petición no se había alegado que el peticionario había requerido al demandado que lo repusiera, y la corte ejerciendo su discreción concedió permiso al peticionario para radicar una petición enmendada. Luego fué el propio peticionario quien, por estipulación con el querellado, sometió el caso con la prueba adicional de las cartas antes mencionadas. No puede el apelante ahora quejarse de sus pro-

pias actuaciones. Si creyó que necesitaba o podía explicar su tardanza de un año cuatro meses para solicitar su reposición en el cargo que ocupaba, debió haber presentado la prueba correspondiente en el juicio y no haber sometido el caso, como lo hizo, en cuanto a las cartas se refiere, por la estipulación que firmó con el querellado. Tuvo conocimiento de la oposición que el querellado hizo a la admisión de las cartas en la que se había planteado la cuestión de laches y nada alegó en contrario.

En el caso de *Urdaz* v. *Padín,* supra, la corte inferior se negó a expedir un auto de mandamus porque de la faz de la petición aparecía que el peticionario había dejado pasar alrededor de tres años en radicar la petición y, confirmando la sentencia, dijimos:

". . . Así pues, la peticionaria tuvo amplia oportunidad para explicar en la petición enmendada o mediante declaraciones juradas en apoyo de la misma, su inusitada demora. En vista del hecho de que no se adujo explicación alguna y del hecho adicional que se desprendía con razonable certeza, aunque no se alegó expresamente por la peticionaria, de que el cargo que una vez ella desempeñó había sido cubierto con la designación de otro maestro, el juez de distrito estuvo a nuestro juicio justificado al llegar a la conclusión de que la demora fué irrazonable y de que la petición de *mandamus* fué presentada demasiado tarde."

En el caso de autos tanto de la petición como de la prueba aparece que el demandado había utilizado a otra persona para que realizara el trabajo del apelante, aun cuando no en el mismo cargo, y el apelante solicitaba no sólo que se le repusiera en el cargo sino que también pedía que se le pagara todo lo que ya se había pagado a esa tercera persona.

██ Sostiene, por último, el apelante que siendo el mandamus un remedio en ley no se puede aplicar la doctrina de equidad sobre demora, laches, a estos casos. Tampoco tiene razón. La jurisprudencia citada demuestra que sí es aplicable.[1] El motivo es, como se dijo en *U. S.* v. *Dern,* 289 U. S.

---

[1] Cf. *Serrano* v. *Talavera,* 65 D.P.R. 438, 442.

352, 359, que "Si bien el remedio de mandamus está clasificado como uno en ley, la expedición del auto está controlada por principios de equidad (citas) y puede denegarse por razones comparables a aquéllas que llevarían a una corte de equidad, en el ejercicio de su sana discreción, a rehusar su protección de un indubitado derecho legal. . . ."

En cuanto a la aplicación de la doctrina de laches en casos como el de autos, la regla general está expuesta en la monografía en 145 A. L. R. 767–8, en esta forma:

"Es regla bien establecida que no importa cuán injusta e impropia sea la destitución, suspensión o traslado de un empleado público, éste puede echar a perder su derecho a que se le restituya si se allana a la destitución, o bien por incuria o demora injustificada en la institución del procedimiento judicial en que solicite se le restituya o se le reconozcan sus derechos. El principio envuelto en todos los casos está basado en consideraciones de política pública, de manera que si tal persona tiene éxito en su pleito, se menoscabe lo menos posible el servicio público, y no se paguen dos sueldos por un solo servicio."

Véanse, además, los casos de *Hill* v. *Fitzgerald* (1907), 193 Mass. 569, 79 N. E. 825; *Kenneally* v. *Chicago* (1906) 220 Ill. 485, 77 N. E. 155; y *Brown* v. *State Personnel Bd.*, (1941), 43 Cal. App. 2d 70, 110 P. 2d 497.

No erró, a nuestro juicio, la corte sentenciadora al considerar que el peticionario había incurrido en laches al dejar pasar dieciséis meses sin solicitar su reposición y dieciocho meses en acudir a la corte, y, en su consecuencia, *se confirma la sentencia apelada.*

El Juez Asociado Sr. Snyder no intervino.