SANTIAGO GONZÁLEZ RIVERA, demandante y recurrido, *v.* JUNTA DE RETIRO PARA MAESTROS, demandada y recurrente.

Número: R-64-62 Resuelto: 31 de enero de 1966

*J. B. Fernández Badillo,* Procurador General, *Rodolfo Cruz Contreras,* Sub-Procurador General, *María Luisa Fuster, Américo Serra* y *Manuel Tirado Viera,* Procuradores Generales Auxiliares, abogados de la recurrente; *Virgilio Brunet,* abogado del recurrido.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Recurre ante nos la Junta de Retiro para Maestros de la sentencia dictada por el Tribunal Superior, Sala de San Juan, ordenándole pagar al recurrido $7,940 por concepto de pensiones dejadas de pagar, descontándosele a esta suma el importe de los sueldos recibidos por éste por su trabajo en el Departamento de Hacienda desde el primero de octubre de 1936 hasta el 31 de diciembre de 1951. En apoyo de este recurso apunta dicha Junta la comisión de tres errores por el tribunal de instancia, a saber: (1) al no considerar el hecho de que se trata de una revisión *sui generis* que debió instarse dentro de un periodo razonable y no quince (15) años después de haberse emitido el dictamen administrativo; (2) al concluir (a) que la pensión fue suspendida no porque el peticionario estuviera bien de la enteritis crónica que originalmente motivó la concesión de pensión sino porque no estaba padeciendo de tuberculosis pulmonar y (b) que de los exámenes médicos no se desprendía que el peticionario ya no padecía de enteritis crónica; y (3) al no considerar que había incurrido en demora injustificada no obstante haber iniciado la acción de *mandamus* años después de suspendida la pensión.

A los efectos de resolver es necesario hacer una relación sucinta de los hechos del caso.

En 6 de mayo de 1933, y por orden de la Junta de Pensiones, el Dr. F. de Juan informó por carta a la Junta que el peticionario sufría entonces de enteritis crónica y por consiguiente estaba incapacitado para ejercer el magisterio en Puerto Rico. En 30 de junio de 1933 la Junta le notificó al peticionario por escrito que se le había asignado una pensión por incapacidad física de $240 al año comenzando el día 1ro. del siguiente mes de julio. Esta pensión se concedió a tenor con la Ley Núm. 68 de 8 de mayo de 1928. Aparecen del récord los informes detallados de los exámenes de radiología, reconocimiento médico y otros, realizados al peticionario por el Dr. García Cabrera en relación con "su examen para solicitud de pensión por inutilidad física ante la Asociación de Empleados del Gobierno Insular". En 1946, de acuerdo con la Sec. 13c de la Ley Núm. 161 de 10 de mayo de 1945([1]) (véase el historial de Fondos para Pensiones para Maestros —18 L.P.R.A. pág. 98) dicha Junta ordenó al peticionario que se sometiera a examen físico y a esos efectos se le refirió al propio Dr. García Cabrera. Los referidos exámenes del peticionario se llevaron a cabo durante febrero de 1946 y el Dr. García Cabrera informó a la Junta el día 18 de dicho mes que "examinamos al profesor Santiago González que nos informa estar pensionado desde el 1934 por padecer de tuberculosis pulmonar y que actualmente trabaja en el Departa-

---

([1]) La referida disposición de la Ley Núm. 161 en la parte pertinente lee así:

"Los maestros pensionados por incapacidad física de acuerdo con esta Ley o cualquier otra ley anterior de pensiones, serán examinados periódicamente por un médico nombrado por la junta. Si dicha incapacidad desapareciere, el pago de la pensión se continuará por un período de seis (6) meses a partir de la fecha del examen médico declarándolo curado de la incapacidad."

Una disposición similar se ha incluido en la Sec. 30 de la Ley de Retiro para Maestros, Ley Núm. 218 de 6 de mayo de 1951 (18 L.P.R.A. sec. 349) en donde además se dispone que "Los maestros retirados por incapacidad física dejarán de recibir la renta anual vitalicia tan pronto cese este motivo o se dediquen a ocupaciones por las que reciban remuneración, siempre que ésta sea mayor que la renta anual vitalicia".

mento de Hacienda hace un número de años" y que "Es nuestra opinión que se trata de un caso completamente cicatrizado de una lesión mínima del ápice pulmonar del lado derecho que en forma alguna lo incapacita para el trabajo". En el informe aparece un párrafo que lee "Estudio gastrointestinal no presenta signo ni síntoma patológico". El referido doctor volvió a examinar al peticionario y en 2 de enero de 1947 informó a la Junta que "encontramos al señor González en un estado físico general mejor del que presentaba en febrero de 1946". Hizo referencia el facultativo a los estudios completos de la vesícula biliar y gastro intestinales realizados al peticionario en 18 y 20 de diciembre de 1946 por el Dr. Gándara, las conclusiones de los cuales leen así:

"Gall Bladder—The gall bladder is round, at the level of the 11th dorsal vertebra of average size and of normal homogenus density. After the fatty meal evacuation of the dye is satisfactory. Conclusion: Normal gall bladder.

"Gastro Intestinal Series; Preliminary study of the chest shows no gross abnormality of the intra thoracic organs. Fluoroscopic and radiographic study of the stomach and small intestine shows no intrinsic defect or functional disturbance of the stomach; the pylorus is long and narrow but offering no obstruction.

"The duodenal bulb and the rest of the small intestine appear normal. Conclusions: Pyloric hypertrophy with slight stenosis and with no mucosal lesion".

En 12 de marzo de 1946 la Junta informó al peticionario de la conclusiones finales del informe médico de febrero de ese año explicándole que en vista de que "Habiendo desaparecido la dolencia que motivaba su incapacidad física" se suspendía la pensión del peticionario de acuerdo con lo dispuesto en la Sec. 13 (c) de la Ley Núm. 161 de 1945. Y luego del examen de 1947 notificó al peticionario que había desestimado la reconsideración de su caso.

No fue hasta el 29 de agosto de 1962 que el peticionario radicó la acción de *mandamus* que estamos considerando, luego

de (1) haber solicitado en 20 de noviembre de 1961 permiso de la referida Junta para examinar su expediente (2) examinarlo en 27 de febrero de 1962 y (3) enterarse por el mismo que se le había suspendido su pensión en 1946 por no padecer ya de tuberculosis pulmonar cuando la misma se había concedido originalmente por razón de sufrir de enteritis crónica. El mismo día, 27 de febrero de 1962, el peticionario solicitó que la Junta le restaurara su pensión y en 24 de agosto de 1962 dicha Junta denegó esta solicitud.

La única prueba testifical en este caso fue la de dos peritos médicos. El Dr. García Cabrera declaró que "En el estudio gastrointestinal que se hizo, si el señor [el peticionario] hubiera tenido enteritis crónica se hubiera visto". Añadió que una persona que padezca de tal enfermedad no podía dar un resultado normal de vesícula biliar y del sistema gastrointestinal; que "No hay evidencia aquí de evidencia (sic) intestinal crónica"; que cuando examinó al peticionario (en 1946) no padecía de enteritis crónica. En contrainterrogatorio admitió que la conclusión de su informe era que el peticionario no padecía de tuberculosis pulmonar, pero a preguntas del juez sentenciador añadió que los exámenes en estos casos son abarcadores. "No nos limitamos al pulmón. Hacemos un examen de todo el sistema. Consideramos al paciente en su totalidad orgánica y fisiológica". Con la objeción del recurrente se admitió en evidencia el informe del Dr. García Cabrera del examen que le practicó al peticionario en 1933. Por último, y a instancias del recurrido, testificó el Dr. José M. Berio que enteritis crónica quiere decir diarrea crónica que puede limitarse al intestino delgado o al intestino grueso; que en el informe del examen médico del peticionario realizado en 1947 no aparece "hasta qué punto se hace el estudio, si fue el intestino delgado, duodeno . . ."; dijo que el radiólogo simplemente dice "intestino delgado" pero no dice qué porción, ni llegó en su totalidad a estar en el intestino delgado; que "si este paciente tenía una lesión del intestino grueso no

se le examinó; no se pudo determinar por qué no se le hizo un estudio del intestino grueso, no solamente radiológico. Es necesario que se le hagan todos los estudios en el intestino grueso y que se estudie según se hizo una evaluación del intestino delgado"; que "Diarrea crónica puede ser debida a un cuadro de 'esprú' o mala absolución y eso le puede dar radiografías completamente negativas del intestino delgado; un 30, un 40% puede demostrar lesión del intestino delgado pero la mayoría son de lesiones en muchas ocasiones . . . ahí habría que hacer un estudio, otro estudio . . . la enteritis crónica se puede haber debido a una condición neurogénica . . . ." Manifestó que "de este examen que él [Dr. Gándara] hizo no se puede determinar que padecía, de que este señor padeciera de enteritis crónica".

Hubo prueba de que el peticionario trabajó en el Departamento de Hacienda desde el 1ro. de octubre de 1936 hasta el 31 de diciembre de 1951 pero no se ofreció evidencia alguna de sus ingresos con posterioridad a dicha fecha.

El juez de instancia basó su dictamen ordenando el pago de las pensiones no pagadas desde que la Junta las suspendió en 1946 pero rebajadas en la cuantía de los sueldos recibidos por el peticionario del Departamento de Hacienda hasta el 31 de diciembre de 1951, en que "La prueba documental ofrecida por las partes analizada en relación con el testimonio del Dr. J. M. Berio dejó demostrado que ni por el primer examen ni por el segundo podría afirmarse que el peticionario ya no padecía de enteritis crónica que, como indicamos, fue la enfermedad que dio base a la Junta de Pensiones para Maestros para conceder al peticionario una pensión de $20.00 mensuales".

Consideraremos el primer y el tercer apuntamiento conjuntamente pues plantean la cuestión de si el peticionario incurrió o no en demora injustificada en instar su acción.

Esta cuestión fue planteada al tribunal de instancia y éste resolvió que la acción se radicó dentro del término legal

pues el peticionario la instó al mes de que se le negara su solicitud al efecto de que se le restituyera la pensión por haber sido ésta suspendida por una incapacidad distinta a la que él venía padeciendo. Suponemos que el mes a que se refería dicho tribunal es el que transcurrió entre el 24 de agosto de 1962, cuando la Junta denegó la última solicitud del peticionario de que se le restaurara su pensión, y la fecha de la solicitud de *mandamus* en este caso. Arguye, además, el recurrido que la Junta lo indujo a creer que padecía de tuberculosis pulmonar; que dicha Junta lo mantuvo ignorante de la verdadera enfermedad que padecía y por la cual se le concedió la pensión en 1933 hasta que permitió al recurrido examinar su expediente en 1961 cuando encontró, por primera vez, que la causa de su incapacidad no era el estar padeciendo de tuberculosis pulmonar sino de la enteritis crónica diagnosticada por el Dr. de Juan en 1933.

Los hechos del caso no revelan, a nuestro juicio, una ocultación deliberada por parte de la Junta del padecimiento de enteritis crónica del peticionario diagnosticado en 1933. Más bien indican que por error del peticionario, sus exámenes de 1946 y 1947 se concentraron en la determinación de si aún padecía de tuberculosis pulmonar y por inadvertencia del médico examinador y de la Junta, no se descubrió entonces que los *récords* médicos del peticionario, constantes en la Junta, indicaban que la razón de la pensión era incapacidad motivada por enteritis crónica y no tuberculosis pulmonar. Como la enteritis crónica es una enfermedad cuyos síntomas físicos son manifiestos y producen intensa incomodidad, debemos asumir que si el peticionario aún la sufría en 1946 y 1947, él hubiera informado a los médicos que entonces lo examinaron de los síntomas de que para esa fecha padecía, o sea, de la diarrea que le efectaba, información que indudablemente hubiera inducido al Dr. García Cabrera a proceder en consonancia con el récord clínico del paciente iniciado en 1933. Al suspendérsele la pensión por no sufrir entonces de

tuberculosis pulmonar, también es de suponer que el peticionario hubiera solicitado examinar sus récords en la Junta como lo hizo en 1961. Aunque el récord no revela que la Junta le informase al peticionario en 1933 la enfermedad que motivó su pensión, es lógico suponer que éste adquiriese conocimiento de la misma en el transcurso del trámite de la pensión desde los exámenes médicos realizados por los doctores de Juan y García Cabrera a quienes fue referido por la Junta, hasta la determinación de la Junta concediéndole la pensión. La dilación en no exigir el derecho que ahora reclama indudablemente ocasionó perjuicio a la referida Junta pues desde el 1948 y periódicamente desde entonces pudo la Junta hacer examinar al peticionario para determinar si continuaba padeciendo de la enfermedad que originalmente justificó la pensión. *Alonso* v. *Tribunal Examinador de Médicos*, 74 D.P.R. 158 (1952) ; *Jiménez* v. *Junta de Retiro*, 61 D.P.R. 171 (1942).

Concluimos, por lo tanto, que el haber esperado 15 años para solicitar examinar su récord en la Junta y descubrir entonces el alegado error que fundamenta su recurso constituye una demora injustificada en la radicación de esta acción, considérese ésta como de *mandamus* o como una revisión *sui generis*. *Rivera* v. *Pons, Comisionado*, 66 D.P.R. 930 (1947) ; *Urdaz* v. *Padín, Comisionado*, 48 D.P.R. 306 (1935).[2]

---

[2] Las leyes que regulan los derechos de las partes en este caso no proveen recurso alguno ante los tribunales para revisar las determinaciones de la Junta de Retiro para Maestros. Cf. *Correa Suárez* v. *Junta Retiro para Maestros*, 88 D.P.R. 590 (1963). A menos que se encuentre en la ley alguna indicación de una voluntad legislativa de que tales determinaciones sean finales, las mismas están sujetas a revisión judicial. *Medina* v. *Pons*, 81 D.P.R. 1 (1959). También se consideran finales en ausencia de disposición expresa en la ley las determinaciones administrativas en que se trate de una concesión o gracia en contraposición a un derecho. Davis, *Administrative Law Treatise*, Vol. 1, sec. 7.11 y Vol. 4, sec. 58 (1958). Cf. Weintraub, *Development of Scope of Review in Judicial Review of Administrative Action; Mandamus and Review of Discretion*, 33 Fordham L. Rev. 359 (March 1965).

■ 2.—La prueba en este caso en cuanto a si por virtud de los exámenes médicos de 1946 y 1947 se le suspendió la pensión al peticionario por no padecer entonces de enteritis crónica, consistió del testimonio contradictorio de dos peritos médicos. Este tribunal está en las mismas condiciones que el tribunal de instancia para apreciar y aquilatar esta prueba. *Concepción Guzmán* v. *A.F.F.*, 92 D.P.R. 488 (1965); *E.L.A.* v. *Soc. Mario Mercado*, Sentencia de 13 de mayo de 1965; *E.L.A.* v. *Fonalledas Córdova*, 84 D.P.R. 573 (1962). El tribunal de instancia dio entero crédito al perito médico del peticionario quien de la lectura de los informes de los exámenes médicos de 1946 y 1947 concluyó que si el peticionario tenía una lesión en el intestino grueso no se le examinó; que tal situación no se puede determinar porque no se le hizo un estudio del intestino grueso; que la enteritis crónica puede limitarse al intestino delgado o al grueso. Este testimonio, concluyó el tribunal de instancia, dejó demostrado "que ni por el primer examen ni por el segundo podía afirmarse que el peticionario ya no padecía de 'enteritis crónica' ". Creemos que tal conclusión es errónea pues el testimonio de este perito no fue lo suficientemente preciso, ni su conclusión determinante, en el sentido de que tales exámenes no demostraron que el peticionario ya no padecía de la causa que originalmente dio lugar a su pensión. Por el contrario, el médico que lo examinó en 1933 y luego en 1946 y 1947, y que por lo tanto estaba más íntimamente familiarizado con el estado de salud del peticionario, testificó en forma indubitable que una persona que padezca de enteritis crónica no puede dar un resultado normal de vesícula biliar y del sistema gastrointestinal. En tal virtud, resultaba evidente de los dos últimos exámenes que el peticionario no padecía de enteritis crónica en 1946 y que por lo tanto estaba justificado que se le suspendiera su pensión entonces. Bajo las circunstancias del caso creemos que el testimonio del Dr. García Cabrera ha debido merecer entero crédito y que su conclusión sobre la cuestión médica

planteada en este caso no fue destruida por el testimonio del otro perito que en efecto hizo varias conjeturas basadas en su mera lectura de los informes de los exámenes médicos realizados al peticionario en 1946 y 1947. Cf. *Concepción Guzmán,* supra.

*Por los fundamentos expuestos, se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en este caso, en 14 de febrero de 1964, y en tal virtud se declarará sin lugar la petición radicada en el mismo.*

