MARÍA TERESA QUIÑONES DE CORREA SUÁREZ, peticionaria y recurrente, *v*. JUNTA DE RETIRO PARA MAESTROS DE PUERTO RICO, demandada y recurrida.

*Número:* 630     *Resuelto:* 20 de junio de 1963

*Virgilio Brunet,* abogado de la recurrente; *J. B. Fernández Badi-llo, Procurador General,* y *Nilita Vientós Gastón, Procurador General Auxiliar,* abogados de la recurrida.

Sala integrada por el Juez Asociado Señor Blanco Lugo como Presidente Accidental de Sala y los Jueces Asociados Señores Dávila y Ramírez Bages.

El Juez Asociado Señor Ramírez Bages emitió la opinión del Tribunal.

Según la estipulación radicada por las partes en este caso la recurrente, María Teresa Quiñones de Correa, al cesar en 16 de enero de 1959 como maestra y como miembro del Sistema de Retiro para Maestros de Puerto Rico, provisto por la Ley Núm. 218 de 6 de mayo de 1951 (18 L.P.R.A. secs. 321–366):

(1) había cumplido 50 años, 3 meses y 16 días, de edad;

(2) había trabajado para el Gobierno de Puerto Rico durante los siguientes períodos:

(a) Maestra    8 años    4 meses    15 días    (desde el año escolar 1930 –1931)

(b) Empleada en Departamento del Trabajo   16 años    2 meses    16 días    (desde el 2 de sept. de 1941)

| (c) Maestra | 1 año | 1 mes | 3 días | (desde el |
|---|---|---|---|---|
| Total | 25 años | 8 meses | 4 días | 30 de nov. de 1957) |

(3) sus cotizaciones al Fondo de Pensiones para Maestros de Puerto Rico (entonces en vigor de acuerdo con la Ley Núm. 68 de 8 de mayo de 1928, según enmendada—18 L.P.R.A. pág. 98) durante el período clasificado bajo la letra (a) anterior fueron transferidas al sistema de retiro para funcionarios y empleados del Gobierno de Puerto Rico, establecido por la Ley Núm. 23 de 16 de julio de 1935 (3 L.P.R.A. pág. 634) y a este sistema (y a su sucesor prescrito por la Ley Núm. 447 de 15 de mayo de 1951—3 L.P.R.A. sec. 761—denominado el "Sistema de Retiro de los Empleados del Gobierno Estadual de Puerto Rico y sus Instrumentalidades") continuó cotizando la recurrente durante el período señalado bajo la letra (b) anterior;

(4) al volver la recurrente a ejercer el magisterio por el período especificado bajo la letra (c) anterior, comenzó a cotizar al "Fondo de Anualidades y Pensiones para Maestros de Puerto Rico" establecido por la Sec. 4 de la citada Ley Núm. 218 (18 L.P.R.A. sec. 323);

(5) el "Sistema de Retiro de los Empleados del Gobierno Estadual" concedió un crédito a la recurrente de 25.25 años por los períodos clasificados bajo las letras (a) y (b) anteriores en virtud de las disposiciones de la Ley Núm. 447, *supra;*

(6) el Sistema de Anualidades y Pensiones para Maestros establecido por la referida Ley Núm. 218 concedió a la recurrente una renta mensual de $4.04 por el período designado bajo la letra (c) anterior y envió un cheque a ésta por la cantidad de $74.81 para cubrir el monto de dicha mensualidad correspondiente al período de 6 de enero de 1959 a 31 de julio de 1959 que la recurrente no aceptó, devolviendo dicho

cheque en 16 de agosto de 1961 al Secretario Ejecutivo de la Junta de Retiro para Maestros de Puerto Rico.

En 6 de febrero de 1960 radicó la recurrente, una solicitud de *mandamus* en el Tribunal Superior, Sala de San Juan, contra la Junta de Retiro para Maestros y la Junta de Retiro de los Empleados del Gobierno de Puerto Rico, alegando en síntesis, que a la luz de los hechos previamente expuestos tenía derecho a una renta anual vitalicia de acuerdo con la Sec. 19 de la referida Ley Núm. 218 (18 L.P.R.A. sec. 338); que no obstante haber solicitado por escrito acogerse a los beneficios de dicha ley, la Junta de Retiro para Maestros no le ha concedido la pensión solicitada y que al requerir a la Junta del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico para que efectuara el pago de la porción que a dicho sistema corresponde, ésta se negó porque la recurrente no tenía derecho a ello, ya que no había cumplido 58 años de edad. En su contestación las recurridas admitieron ciertos hechos alegados en la solicitud y negaron otros e interpusieron cuatro defensas especiales, dos con respecto a la improcedencia del recurso en sí, y dos al efecto de que bajo el plan de reciprocidad provisto por la Ley Núm. 59 de 1953 (3 L.P.R.A. secs. 797–806), en síntesis, la recurrente "tiene derecho únicamente al disfrute de una pensión aproximadamente $4.04 mensuales con el Sistema de Retiro de los Maestros". Luego de varios incidentes que sería prolijo discutir,[1] las partes suscribieron la referida estipulación sobre los hechos en que se basa la contienda y sometieron el caso a la conside-

---

[1] El tribunal de instancia, en su resolución de 15 de agosto de 1960, resolvió además que no procedía la defensa especial de ser improcedente el *mandamus* por no haberse agotado el remedio administrativo, ya que por virtud de la referida Ley Núm. 59, era el sistema de retiro que cubría a la recurrente al cesar en el servicio público—en este caso el sistema de retiro de los maestros—al que debe dirigirse en solicitud de pensión y el que debe resolver sobre tal solicitud, no proveyéndose apelación o recurso administrativo otro alguno por la citada Ley Núm. 218 de las determinaciones al respecto de la Junta de Retiro para Maestros. Ninguna de las partes ha cuestionado este dictamen.

ración del tribunal de instancia. Éste declaró sin lugar la solicitud en un extenso y bien elaborado dictamen de 24 de octubre de 1961 que confirmamos en parte y modificamos, según exponemos a continuación.

La recurrente le imputa al tribunal sentenciador la comisión de seis errores que sintetizamos en la siguiente forma:

(1) Al ignorar la parte de la resolución dictada en 15 de agosto de 1960 por el Hon. Juez Plinio Pérez Marrero declarando que la recurrente tenía derecho "ahora" a una pensión y que los cómputos de la misma los haría el Sistema de Retiro para Maestros. Esto forma parte de la resolución a que hacemos referencia en el escolio 1 de esta opinión.

(2) Al determinar que a los efectos de recibir tal pensión la recurrente tiene que cumplir con los requisitos de edad tanto de la Ley Núm. 218 con respecto al retiro de maestros como de la Ley Núm. 447 con respecto al retiro de empleados del Gobierno, y que sólo puede recibir una pensión proporcional de cada sistema al cual hubiere servido cuando haya cumplido con los requisitos en cuanto a edad y años de servicio establecidos por cada uno de dichos sistemas.

(3) Al declarar que la recurrente sólo tiene derecho a recibir una pensión de $4.04 a la fecha de su jubilación, según la estipulación indicada.

(4) Que la sentencia del tribunal de instancia está basada en una interpretación errónea que derrota la intención legislativa expresada por las Comisiones de Elecciones y Personal de la Cámara de Representantes y del Senado de Puerto Rico al adoptar la referida Ley Núm. 59.

■ El primer error no fue cometido. La resolución de 15 de agosto de 1960 no fue una sentencia final en este caso. Únicamente dictaminó sobre ciertas defensas especiales dejando en efecto la controversia principal del caso para resolverse cuando se viera el recurso en su fondo. De todos modos no existía impedimento alguno a que se dictaminase

en forma contraria a ésta resolución al quedar el caso sometido en sus méritos para resolución y sentencia.

La consideración de los otros errores envuelven dos cuestiones principales. a resolver en este caso; primero, si la recurrente tiene derecho a la renta anual vitalicia que solicita del Fondo de Anualidades y Pensiones para Maestros de Puerto Rico, al cesar en el servicio público en 16 de enero de 1959, exclusivamente a base de cumplir con los requisitos de edad y años de servicio del mismo, y segundo, en caso de no ser así, si debe pagársele la renta anual vitalicia mínima de $720 que fija la Sec. 21 de la Ley Núm. 218, *supra.*

■ Concluimos que la recurrente no tiene derecho a la renta anual vitalicia consistente principalmente en la anualidad proporcional por retiro proveniente del Sistema de Retiro de los Empleados del Gobierno Estadual de Puerto Rico provisto por la mencionada Ley Núm. 447 que ha retenido las cotizaciones por concepto de retiro realizadas por la recurrente durante los períodos señalados bajo las letras (a) y (b) anteriores. Sin embargo, tiene derecho la recurrente a la renta anual vitalicia mínima a que hacemos referencia en el párrafo anterior. A continuación exponemos las razones en apoyo de estas conclusiones.

La Ley Núm. 59 de 10 de junio de 1953, conocida como la Ley de Reciprocidad (3 L.P.R.A. secs. 797 a 806) establece un plan para garantizar la continuidad de créditos por servicios entre el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades, el Sistema de Anualidades y Pensiones para Maestros de Puerto Rico, el Sistema de Retiro de la Universidad de Puerto Rico, el Sistema de Retiro de los Empleados de la Autoridad de Fuentes Fluviales de Puerto Rico y cualquier otro sistema que se crease en el futuro. Mediante este plan "[t]odo empleado que se separe del servicio de un patrono para ingresar en el servicio de otro patrono que mantenga un plan de retiro, según se define en la presente, será automáticamente miembro

de ese sistema por lo cual no tendrá derecho al reembolso de las aportaciones acumuladas a su favor en el sistema de retiro del cual se separó. Dichas aportaciones y los créditos por servicios acumulados a su favor, según le hayan sido reconocidos al empleado por el sistema al cual pertenecía, permanecerán en el sistema en el cual se establecieron hasta que el empleado se jubile por razón de edad, incapacidad o años de servicios bajo las disposiciones de las leyes o reglamentos en vigor que rijan el sistema de retiro al cual pertenecía a la fecha de su retiro, . . . A la fecha de jubilación, el sistema o los sistemas en los cuales se hubieren establecido los créditos computarán una anualidad proporcional de los servicios acreditados al empleado en ese o esos sistemas. . . ." Art. 3 de dicha ley, 3 L.P.R.A. (suplemento) sec. 799.

La recurrente trabajó como maestra comenzando en el año escolar de 1930–1931 durante 8 años, 4 meses y 15 días. Durante este período perteneció y cotizó al Sistema de Pensiones para Maestros de Puerto Rico. Luego trabajó en el Departamento del Trabajo como empleada del Gobierno de Puerto Rico durante 16 años, 2 meses y 16 días perteneciendo y cotizando al Sistema de Retiro de los Empleados del Gobierno de Puerto Rico. Al ocurrir este cambio de empleo en 1941, no estando en vigor la Ley de Reciprocidad, los fondos que la recurrente había aportado al Sistema de Pensiones para Maestros de Puerto Rico fueron transferidos por dicho sistema al Sistema de Retiro de los Empleados del Gobierno de Puerto Rico. Finalmente, desde el 30 de noviembre de 1957 al 16 de enero de 1959, o sea por 1 año, 1 mes y 3 días, la recurrente volvió a trabajar como maestra en el Departamento de Instrucción perteneciendo y cotizando al Sistema de Retiro de los Maestros. Al realizar la recurrente este segundo cambio de trabajo, y de acuerdo con el citado Art. 3 de la Ley de Reciprocidad, las cotizaciones de la recurrente existentes entonces en el Sistema de Retiro de los Empleados del Gobierno Estadual de Puerto Rico fueron retenidas en

este sistema. Al cesar como maestra en 16 de enero de 1959 la recurrente había cumplido 50 años, 3 meses y 16 días y tenía a su favor créditos por 25.25 años de servicio. En este momento, los sistemas en los cuales se establecieron estos créditos venían obligados a computar una anualidad proporcional por retiro a los servicios acreditados a la recurrente (Sec. 3 de la Ley Núm. 59, *supra.*) En dicha fecha la recurrente cumplía con los requisitos de edad y años de servicio del Sistema de Retiro para Maestros—Sec. 2 de la referida Ley Núm. 218—(18 L.P.R.A. sec. 338) pero, por supuesto, no con el requisito de 58 años de edad del Sistema de Retiro de los Empleados del Gobierno Estadual de Puerto Rico—Art. 6 de la referida Ley Núm. 447 (3 L.P.R.A. sec. 766). ¿Cuál es el efecto de esta diferencia en cuanto al requisito mínimo de edad entre estos dos sistemas de retiro en este caso? La referida Ley de Reciprocidad provee al efecto lo siguiente:

(Art. 4 de la citada Ley Núm. 59—3 L.P.R.A., suplemento, sec. 800)

"En cualquier caso que el empleado se retire bajo las disposiciones de un sistema a una edad menor que la edad opcional más baja o mínima de retiro que prescriba otro sistema que vaya a proveer una anualidad proporcional por retiro, el *comienzo de los pagos de tal anualidad se pospondrá hasta que el empleado llegue a la edad mínima de retiro prescrita por el sistema que provea tal anualidad.*" (Énfasis nuestro.)

Esta disposición, de por sí, da lugar a la interpretación de que la posposición en cuestión sólo aplica entre los dos sistemas de retiro, o sea que en el caso de autos, el Sistema de Retiro de Empleados del Gobierno Estadual de Puerto Rico no viene obligado a pagar al Sistema de Retiro para Maestros la anualidad proporcional a que se refiere el Art. 3 hasta que la recurrente cumpla 58 años de edad. La disposición del Art. 8 de la Ley de Reciprocidad (3 L.P.R.A. sec. 804) parece reforzar esta interpretación al disponer que el sistema de retiro que provea una anualidad proporcional por retiro trans-

ferirá al sistema en que el empleado se retira, a la terminación de cada año económico, una cantidad igual al pago de tal anualidad . . . o una cantidad igual al valor actuarial de una pensión por retiro. De acuerdo con la contención de la recurrente, no obstante esto, este último sistema viene obligado a pagarle su pensión calculada a razón de 1.8% multiplicado por 25 y multiplicado por el promedio más alto de sueldos durante 5 años consecutivos, según lo dispone la Sec. 19 de la Ley Núm. 218 (18 L.P.R.A. sec. 338), debido a que el Art. 5 de la Ley de Reciprocidad (Ley Núm. 59 de 10 de junio de 1953— 3 L.P.R.A. sec. 800) dispone que *"Las disposiciones de la ley o reglamento en vigor en el sistema al cual el empleado esté acogido a la fecha de su jubilación regirán y determinarán su elegibilidad para retiro u otros beneficios."*

Convenimos con la recurrente que al interpretar la Ley de Reciprocidad debemos considerar todas sus disposiciones conjuntamente, que al interpretar el estatuto debemos procurar que haya armonía entre sus diversas partes, que cualquier interpretación que resulte en la anulación de una disposición por otra de la misma ley debe descartarse, que debemos determinar el motivo o razón que tuvo el legislador al aprobar el estatuto en cuestión, y que los estatutos de pensiones deben ser interpretados liberalmente a favor de los pensionados. *Ginsberg & Sons* v. *Popkin*, 285 U.S. 204 (1932); *Walton* v. *Cotton*, 15 L.Ed. 658 (1857); *Mendles* v. *Danish*, 65 Atl. 888 (N.J. 1907); *Yates County Nat. Bank* v. *Carpenter*, 23 N.E. 1108 (N.Y. 1890); Crawford, *Statutory Construction*, págs. 260, 261, 288, 289. En el caso de *Ginsberg*, supra, también se dijo que una disposición específica de un estatuto prevalece sobre disposiciones generales del mismo u otro estatuto que en ausencia de aquélla podrían proveer lo pertinente sobre determinada situación. En armonía con estas reglas de interpretación para determinar el derecho de la recurrente en este caso, debemos considerar, además, la última parte del citado Art. 4 de la Ley de Reciprocidad, que provee:

*"Es la intención de este párrafo que cualquier empleado con derecho a una anualidad proporcional por retiro, empiece a recibir los pagos correspondientes del sistema de retiro que provea tal anualidad a la misma edad y bajo las mismas condiciones . . . que para aquellos otros empleados cubiertos por ese sistema, usando en el caso de ese empleado los créditos por servicios establecidos bajo todos los sistemas, según se provee en la presente, con el fin de que no se establezcan privilegios para ningún empleado mediante las disposiciones de los art. 1 a 10 de esta ley en lo que respecta a la fecha en que comenzarán los pagos por retiro."* (Énfasis nuestro.)

Contrario a la posible interpretación estatutaria que previamente habíamos indicado siguiendo la argumentación de la recurrente, esta disposición aclara (1) que la "anualidad proporcional por retiro" proveniente en este caso del sistema de retiro de empleados del gobierno estatal, forma parte de la "anualidad por retiro" a que tiene derecho la recurrente al jubilarse y (2) que ella debe recibir los pagos de esta anualidad atribuibles al referido sistema *a la misma edad y bajo las mismas condiciones que otros empleados bajo dicho sistema,* o sea, a los 58 años, *con el fin de que no se establezcan privilegios para ningún empleado.* En otras palabras, aunque de acuerdo con el Art. 8 de la Ley de Reciprocidad antes citado, en este caso el sistema de retiro de empleados del gobierno estatal viene obligado a transferir anualmente al sistema de retiro de los maestros una cantidad igual al pago de la anualidad proporcional o una cantidad igual al valor actuarial de una pensión por retiro correspondiente a la recurrente, la citada última parte del Art. 4 de dicha ley limita esta obligación a transferir con el fin de evitar privilegios entre empleados, *los pagos que el sistema de retiro de maestros realice a la recurrente provenientes de tal o tales transferencias los cuales debe empezar a recibir ésta a la misma edad y bajo las mismas condiciones que para los otros empleados cubiertos por el sistema de retiro de empleados del gobierno estatal.* La referida limitación del Art. 4 subsiste no obstante

los términos del Art. 8 ya que el proveer éste para la transferencia de las anualidades proporcionadas se refiere a las mismas "según las disposiciones de esta ley", o sea, que el Art. 8 se refiere específicamente a las anualidades proporcionales calculadas y limitadas según el referido Art. 4.

El problema se reduce ahora a determinar si es o no posible armonizar la interpretación que acabamos de exponer con lo dispuesto en el Art. 5 de la Ley de Reciprocidad al efecto de que las disposiciones de la ley en vigor en el sistema al cual el empleado esté acogido a la fecha de su jubilación regirán y determinarán su elegibilidad para *retiro u otros beneficios*. Basada en esta disposición es que la recurrente sostiene que ella tiene derecho a una "anualidad por retiro" calculada de acuerdo con los términos de la Sec. 19 de la Ley Núm. 218 antes citada que regula el sistema de retiro para maestros, o sea, igual al 1.8% multiplicado por 25 y multiplicado por el promedio de sueldos más altos durante los últimos 5 años consecutivos (la recurrente recibió compensación durante 4 de sus últimos 5 años como empleada, por servicio al gobierno en el Departamento del Trabajo), pagadera dicha anualidad tan pronto cesó la recurrente en su último empleo como maestra aunque sólo tiene 50 años de edad, ya que por esa edad es también elegible bajo el sistema de retiro de maestros. Según la recurrente el hecho de que esto indudablemente desajustaría actuarialmente este último sistema no debe tomarse en consideración, pues el propósito legislativo fue el facilitar la transferencia de empleados de un servicio del gobierno a otro y que cualquier posible desajuste actuarial resultante sería corregido mediante asignaciones legislativas al sistema que lo sufriere. No tenemos duda que bajo el Art. 5 citado la recurrente es elegible a retirarse a los 50 años con sus 25.25 años de servicio acreditados, y que los "otros beneficios" a que se refiere dicho Art. 5 podrían ser beneficios tales como préstamos, seguros, beneficios por razón de defunción, etc., provistos bajo el sistema de retiro de maestros. Pero a

la luz de la clara e indubitable última disposición del Art. 4 que, con el fin de evitar privilegios entre empleados, pospone el pago al jubilado proveniente de una anualidad proporcional hasta que éste cumpla la edad mínima provista como condición de pago bajo el sistema de donde proviene tal anualidad, nos vemos obligados a concluir que el pago a la recurrente al cesar en su último empleo, como maestra, de la parte de su "anualidad por retiro" atribuible a la anualidad proporcional proveniente del sistema de retiro de los empleados del gobierno estatal, no puede considerarse incluido como entre los "otros beneficios" que contempla el referido Art. 5. Las disposiciones del Art. 7 de la Ley de Reciprocidad sostienen esta conclusión al disponer que: "A la fecha de separación de un empleado por . . . renuncia o cualquier otra causa, los beneficios por seguro, defunción o cualquier otro beneficio, *excluyendo las anualidades por retiro, se regirán por las disposiciones del sistema en que se encuentre cuando ocurra dicha separación* . . ." (Énfasis nuestro.)

■ Veamos, por último, si la interpretación que hemos hecho a los efectos de la situación en este caso, está en armonía con el propósito que animó a la Asamblea Legislativa a formular y aprobar la referida Ley de Reciprocidad. Según su Art. 1 (3 L.P.R.A. sec. 797) el propósito de dicha ley es establecer un plan para *garantizar la continuidad de créditos por servicios* entre los varios sistemas de retiro de empleados públicos mediante el cual los empleados mantengan la continuidad de todos sus derechos por todos los servicios *prestados* al gobierno, sus instrumentalidades y dependencias cubiertas por cualquier sistema de retiro. El Informe al Senado de la Comisión de Elecciones y Personal, de 30 de abril de 1953 (Diario de Sesiones de 1953, vol. II, tomo II, pág. 1301) expresa que los propósitos de dicha ley, en adición al expuesto en dicho Art. 1 de la misma ley son: 1) proveer un sistema mediante el cual se puede hacer posible el intercambio de derechos y la transferencia de crédito por servicios acumulados

entre los distintos sistemas de retiro que funcionan para beneficio de los empleados y funcionarios del Estado Libre Asociado y 2) hacer posible que los créditos acumulados por un empleado que se transfiere de un sistema de retiro a otro permanezca con el sistema en el cual se establecieron y que ese sistema pague la parte proporcional que corresponda de la pensión al retirarse el empleado, *evitando así que el sistema al cual se transfiere un empleado tenga que pagar beneficios que están en desproporción con la aportación que el empleado y el patrono han hecho a ese sistema.* Nos parece evidente de los propios términos del Art. 1 de la Ley de Reciprocidad y del referido informe que los propósitos que tuvo la Asamblea Legislativa al aprobar la referida Ley de Reciprocidad fueron: a) proveer para la continuidad de los créditos por servicios de los empleados públicos, b) evitar el desajuste actuarial de los distintos sistemas de retiro de los empleados públicos y, al efecto de darle efectividad a este segundo propósito, c) que "la anualidad por retiro" de cada empleado fuese la suma de las anualidades proporcionales computadas por cada sistema de retiro al cual el empleado hubiese cotizado durante su servicio público, transferidas anualmente, o en una suma igual al valor de una pensión por retiro, al sistema en el cual el empleado esté acogido a la fecha de su jubilación y pagadera al empleado cada anualidad proporcional al llegar el empleado a la edad mínima prescrita por el sistema que calcula y transfiere la anualidad proporcional. A nuestro juicio, nuestra conclusión de que en este caso en particular la anualidad proporcional proveniente del sistema de retiro de los empleados del gobierno estatal no es pagadera a la recurrente hasta que cumpla la edad mínima de 58 años prescrita por dicho sistema, está en armonía absoluta con los referidos propósitos legislativos y, por el contrario, la interpretación aducida por la recurrente está en conflicto con la misma, pues al exigir que su "anualidad por retiro" se calcule exclusivamente a base de lo dispuesto en el sistema de retiro para maestros

desajustaría actuarialmente dicho sistema, hace caso omiso del plan de "anualidades proporcionales" y sobre todo del requisito del Art. 4 de la Ley de Reciprocidad de que éstas no se paguen hasta que el empleado llegue a la edad mínima prescrita por el sistema de donde provienen dichas anualidades, para así evitar privilegios entre empleados. Cf. *Clínica Juliá* v. *Sec. de Hacienda*, 76 D.P.R. 509 (1954); *U.S.* v. *Public Utilities Commission*, 345 U.S. 295 (1953); *Marmon* v. *Railroad Retirement Board*, 218 F.2d 716 (3d Cir. 1955); Sutherland, *Statutory Construction*, 3ra. ed., vol. 2, sec. 4702.

Alega la recurrente en su cuarto señalamiento de error, que cometió error el tribunal al resolver que sólo tiene derecho a una pensión de $4.04 mensuales del Sistema de Retiro para Maestros. Un examen de la Sec. 21 de la Ley Núm. 218 (18 L.P.R.A. sec. 340), y del Art. 5 antes citado de la Ley de Reciprocidad es suficiente para determinar que en efecto erró el tribunal al así resolver. Dicha sección establece uno de los beneficios de la ley "en vigor en el sistema al cual el empleado esté acogido a la fecha de su jubilación" y que regirá lo concerniente a su retiro. Dispone la referida sección que si el maestro se retirase del servicio por años de servicios prestados sin haber cumplido 58 años de edad, recibirá solamente la renta anual vitalicia que disponga la ley de retiro de los maestros (específicamente en su Sec. 19), que en ningún caso será menor de $720. De acuerdo con el referido Art. 5 de la Ley de Reciprocidad, todos los períodos de servicios acreditables que hayan sido certificados por otros sistemas de acuerdo con las disposiciones de dicha ley se sumarán a los servicios acreditados en el sistema en que él vaya a jubilarse para que el empleado pueda establecer su elegibilidad para una anualidad por retiro. De suerte que los 25 años de servicios de la recurrente bajo los períodos (a) y (b) indicados en la estipulación a que hicimos referencia al comienzo de esta opinión pueden usarse en el caso de la recurrente para determinar que ella cumple con el requisito de años de servicio

prescrito por la Sec. 19 de la Ley Núm. 218 para ser elegible a recibir la renta anual vitalicia mínima que provee la Sec. 21 de dicha ley. El referido Art. 4 específicamente provee que en un caso como éste "El empleado tendrá derecho a recibir la anualidad mínima por retiro que provea el sistema en el que se encuentra a la fecha de su retiro." La recurrente en este caso tiene derecho a recibir de la Junta de Retiro de los Maestros una renta anual vitalicia mínima de $720, (²) ya que ella era miembro o participante del sistema de anualidades y pensiones para maestros y, como acabamos de indicar, llenaba al retirarse las condiciones que dicho sistema prescribe para el pago de dicha anualidad mínima. El pago de esta renta se continuará realizando a la recurrente hasta que ésta haya cumplido 58 años de edad cuando se determinará la cuantía de su renta anual vitalicia que deberá pagársele desde entonces basada principalmente en la anualidad proporcional proveniente del Sistema de Retiro de los empleados del Gobierno Estadual de Puerto Rico provisto por la referida Ley Núm. 447.

*Debe modificarse la sentencia a ese efecto y confirmarse en sus demás pronunciamientos.*

---

(²) El Proyecto Sustitutivo al Proyecto del Senado Núm. 505, aprobado en la sesión ordinaria de 1963 de la Asamblea Legislativa de Puerto Rico, pendiente de consideración por el Gobernador del Estado Libre Asociado, provee sustanciales enmiendas a las Secs. 2, 3, 4, 5, 6, 8 y 9 de la Ley Núm. 59 de 10 de junio de 1953 conocida como la Ley de Reciprocidad. Pero de acuerdo con la Sec. 3 de este proyecto de convertirse el mismo en ley, sus disposiciones "no afectarán en forma alguna a aquellos miembros de algún sistema de retiro que a la fecha de vigencia de esta ley se encuentren disfrutando de una pensión o anualidad por retiro" como es el caso de la recurrente, "a cuyos efectos subsistirá el texto hasta el presente en vigor de las disposiciones aquí enmendadas."