EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ramón Joel Miranda Santos<br><br>Peticionario<br><br>v.<br><br>Sistema de Retiro para Maestros<br><br>Recurrido | Certiorari<br><br>2023 TSPR 39<br><br>211 DPR ___ |

Número del Caso: CC-2022-0699

Fecha: 24 de marzo de 2023

Tribunal de Apelaciones:

    Panel III

Abogado de la parte peticionaria:

    Lcdo. William Vázquez Irizarry

Materia: Resolución de Sala Especial de Despacho con Voto particular disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

INTEGRACIÓN DE SALA ESPECIAL

ORDEN

En San Juan, Puerto Rico, a 20 de marzo de 2023.

Por estar igualmente divididos los votos de los miembros de esta sala, se constituye una Sala Especial de Despacho integrada por la Jueza Presidenta Oronoz Rodríguez, la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Kolthoff Caraballo, el Juez Asociado señor Rivera García y el Juez Asociado señor Estrella Martínez, para atender el caso CC-2022-699, Ramón Joel Miranda Santos v. Sistema de Retiro para Maestros.

Lo decretó y firma,

Maite D. Oronoz Rodríguez
Jueza Presidenta

CERTIFICO:

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Joel Miranda Santos

    Peticionario

       v.                      CC-2022-0699

Sistema de Retiro para Maestros

    Recurrido

Sala Especial de Despacho integrada por la Jueza Presidenta Oronoz Rodríguez, la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Kolthoff Caraballo, el Juez Asociado señor Rivera García y el Juez Asociado señor Estrella Martínez

RESOLUCIÓN

En San Juan, Puerto Rico, a 24 de marzo de 2023.

Atendida la *Solicitud de reconsideración* que presentó la parte peticionaria, se provee no ha lugar.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emite un Voto Particular Disidente al cual se une la Jueza Presidenta Oronoz Rodríguez.

                Javier O. Sepúlveda Rodríguez
            Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Ramón Joel Miranda Santos<br><br>Peticionario<br><br>v.<br><br>Sistema de Retiro para Maestros<br><br>Recurrido | CC-2022-0699 | Certiorari |

Voto particular disidente emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ, al cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 24 de marzo de 2023.

Este Tribunal viene llamado a descargar su responsabilidad de resolver casos y controversias meritorias al amparo de nuestra Constitución y de las leyes que de ella emanan. En la ejecución de tal trascendental tarea, es nuestro deber intervenir en aquellas instancias en las cuales se incurran en interpretaciones erradas y, como consecuencia, se generen injusticias contra los sujetos de derecho que nuestro sistema de justicia debe proteger.

Precisamente, el recurso de epígrafe nos convocaba a corregir un error en la interpretación de un estatuto para evitar una patente injusticia contra un servidor público a quien se le ha impedido transferir de un sistema a otro una parte considerable de sus aportaciones para su pensión de retiro. Lo anterior como producto de una interpretación

descontextualizada del Art. 3.5 de la Ley del sistema de retiro para maestros del Estado Libre Asociado de Puerto Rico, Ley Núm. 160-2013, 18 LPRA 393 et seq. (Ley Núm. 160), efectuada por los foros recurridos. Resulta lamentable que hoy un bloque de este Tribunal valide sub silentio este proceder. De este modo, queda cimentada la edificación de una barrera irrazonable para la materialización del principal postulado de la Ley Núm. 160: **el aseguramiento de un retiro digno para todos los participantes del sistema de retiro para maestros de Puerto Rico.**

No puedo permanecer indiferente ante tal curso de acción. En cambio, reafirmo que esta Sala Especial[1] debió rectificar este derrotero, atender adecuadamente la controversia e interpretar correctamente el alcance del Art. 3.5 de la Ley Núm. 160, supra el cual, como veremos, limita a un escenario específico la prohibición de efectuar transferencias de las aportaciones de un sistema de retiro hacia el de los maestros.

Procedo, entonces, a consignar las bases fácticas y jurídicas que orientan mi disenso.

---

[1] La Sala de Despacho I atendió la Solicitud de reconsideración del recurso que nos ocupa, quedando igualmente dividida. Ello, dado que la Jueza Presidenta Oronoz Rodríguez y este Juez expediríamos, mientras que la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García proveyeron no ha lugar. Por estar igualmente divididos, se creó una Sala Especial integrada por un quinto miembro: el Juez Asociado señor Kolthoff Caraballo, quien proveyó no ha lugar, convirtiéndose ese dictamen en el objeto de este disenso.

**I**

El Sr. Ramón Joel Miranda Santos (señor Miranda Santos o Peticionario) ha sido un servidor público por casi treinta (30) años. Este inició su carrera en la Oficina del Contralor de Puerto Rico en abril de 1993 hasta el 31 de agosto de 2004. Durante ese periodo de tiempo, realizó aportaciones a su retiro a través de la Administración del Sistema de Retiro de los empleados de Gobierno y la Judicatura de Puerto Rico (ASR).

A partir del 1 de septiembre de 2004, el señor Miranda Santos pasó a ocupar un puesto de carrera en el Sistema de Retiro para Maestros (SRM). Por tal razón, ingresó como participante a ese sistema de retiro.[2] En consecuencia, las aportaciones que tenía acumuladas en la ASR fueron transferidas al SRM. Así las cosas, el Peticionario continuó trabajando y aportando para su retiro bajo el SRM hasta el 30 de septiembre de 2008.

Lo anterior, ya que, desde el 1 de octubre de 2008 el señor Miranda Santos trabajó para el gobierno central hasta el 17 de agosto de 2015. Es de notar que, aunque permaneció como miembro del SRM, durante este periodo sus aportaciones para su plan de retiro fueron canalizadas a través de la ASR.

---

[2] Por disposición expresa de la Ley 160, en adición a las y los maestros, todo empleado del SRM viene obligado a cotizar bajo este sistema para su retiro. Véase, 18 LPRA secs. 393(v) y 395.

Finalmente, el Peticionario regresó a trabajar para el Sistema de Retiro para Maestros el 18 de agosto de 2015. Por tanto, volvió a cotizar para el SRM. **Así pues, este solicitó que sus aportaciones acumuladas entre el 1 de octubre de 2008 y el 17 de agosto de 2015 fueran transferidas de la ASR al SRM.**

Al evaluar esta solicitud, inicialmente el SRM le notificó que había realizado con éxito esta transferencia. Sin embargo, posteriormente la revirtió. Para justificar su cambio de postura, el SRM se amparó en cierta porción del Art. 3.5 de la Ley Núm. 160, supra la cual prohíbe que se pueda materializar este tipo de transferencia **a partir del 1 de agosto de 2014.**

Inconforme, el señor Miranda Santos apeló esa decisión ante la Junta de Retiro del Gobierno de Puerto Rico (Junta de Retiro). No obstante, el organismo administrativo confirmó la decisión del SRM al colegir que, de acuerdo con el Art. 3.5 de la Ley Núm. 160, supra, la prohibición de realizar la transferencia de las aportaciones para su plan de retiro de la ASR al SRM era absoluta.

En desacuerdo, el señor Miranda Santos acudió ante el Tribunal de Apelaciones mediante una Solicitud de revisión. Ante ese foro, planteó que la Junta de Retiro erró al confirmar la denegatoria de la transferencia de las aportaciones para su retiro. Argumentó que la interpretación estatutaria realizada a nivel administrativo

fue irrazonable toda vez que la prohibición del Art. 3.5 de la Ley 160, supra, está condicionada a aquellos servicios que se presten **después del 31 de julio de 2014**. En ese sentido, sostuvo que la Junta de Retiro debió permitir la transferencia de las aportaciones acumuladas en la ASR que fueran anteriores a esa fecha. Empero, el foro apelativo intermedio confirmó el dictamen administrativo al concluir que la interpretación realizada por la Junta de Retiro fue razonable y que, por lo tanto, merecía su deferencia.

Aún en desacuerdo, el señor Miranda Santos recurrió ante nos mediante una Petición de certiorari y, en esencia, planteó que la Junta de Retiro se equivocó en su apreciación del alcance del Art. 3.5 de la Ley Núm. 160, supra. Por lo tanto, adujo que el Tribunal de Apelaciones erró al concederle deferencia a esa determinación. No obstante, sus planteamientos fueron respondidos con un no ha lugar por la Sala de Despacho que atendió inicialmente su recurso.

Ahora, confrontados con una Solicitud de reconsideración, nuevamente una Sala de este Tribunal se rehúsa a revisar los dictámenes recurridos. Con esta denegatoria, se desperdicia la oportunidad de corregir un patente error en la interpretación del Derecho aplicable con la consecuencia de negarle a un trabajador del sector público la posibilidad de poder transferir considerables aportaciones a su plan de retiro actual. No puedo avalar este derrotero.

Por tanto, procedo a exponer desde la disidencia los fundamentos jurídicos por los cuales hubiese expedido el caso de autos con el fin de aplicar el marco normativo y jurisprudencial que analizo a continuación.

## II

## A.

Los planes de retiro del sector público constituyen una parte esencial del contrato de empleo y un beneficio de vital importancia para el empleado público ya que, en la mayoría de los casos, representará la única fuente de ingreso futuro para asegurar una razonable seguridad económica.[3] Bayrón Toro v. Serra, 119 DPR 605, 616-617 (1987). Nótese entonces que el "derecho a pensión de retiro por años de servicio del empleado público tiene un respetable contenido ético y moral". Rosa Resto v. Rodríguez Solís, 111 DPR 89, 92 (1981).

Ciertamente, la concepción inicial fue que estos constituían dádivas por parte del Estado hacia sus empleados. Bayrón Toro v. Serra, supra, pág. 614 (haciendo referencia a Domenech v. Junta de Pensiones, 42 DPR 604 (1931)). Sin embargo, este Tribunal abandonó esa visión desde Rivera v. Rodríguez, 93 DPR 21 (1966) al consignar que "el fundamento jurídico de la pensión no lo constituye

---

[3]Asimismo, las pensiones en el sector público sirven como incentivo para reclutar personal competente frente a los salarios más altos que, como regla general, ofrece la empresa privada. Pagán Santiago v. ASR, supra, pág. 898.

un acto de recompensa del soberano, sino una obligación moral del [E]stado". Íd, pág. 24. Por tal razón, la línea jurisprudencial en esta materia ha sido trasladar la teoría contractual a los sistemas de pensiones del gobierno. Véase, AMPR et als. v. Sist. Retiro V, 190 DPR 854(2014); Pagán Santiago et al. v. ASR, 185 DPR 341 (2012); Bayrón Toro v. Serra, supra. Así pues, los planes de retiro son contratos públicos en los que el Estado y el empleado están vinculados desde su otorgamiento a su cumplimiento. AMPR et als. v. Sist. Retiro V, supra, pág. 897 (Opinión de conformidad del Juez Asociado Señor Estrella Martínez) (citando a Bayrón Toro v. Serra, supra, pág. 618).

Consecuentemente, he sido firme en la defensa de estos planes de retiro ante intentos del Estado de modificar irrazonablemente las condiciones pactadas con los empleados públicos para que estos puedan acceder a su plan de retiro.[4] Íd, pág. 891. Ello ha sido así, particularmente, porque los empleados públicos poseen un interés propietario de naturaleza contractual protegido por la garantía constitucional contra el menoscabo de obligaciones contractuales. Íd., pág. 897. Esa lógica adjudicativa ciertamente está vinculada a nuestra norma hermenéutica que nos requiere interpretar toda legislación referente a los

---

[4]Véase, además, Trinidad Hernández et al. v. ELA et al., 188 DPR 828 (2013) (Opinión disidente del Juez Asociado Señor Estrella Martínez) (consignando mi postura en cuanto a la inconstitucionalidad de la reforma del sistema de pensiones de la ASR).

planes de retiro de forma liberal a favor del pensionado, de modo que propiciemos el cumplimiento con el propósito reparador para las cuales fueron aprobadas. Íd., pág. 898; Calderón v. Adm. Sistemas de Retiro, 129 DPR 1020, 1034 (1992).

**B.**

En lo referente al sistema de pensiones de nuestra clase magisterial, con la aprobación de la Ley Núm. 160 el Estado pretendió realizar una reforma total del SRM creado mediante la Ley Núm. 91-2004. Con esta reforma, el legislador pretendió armonizar dos (2) intereses de vital importancia: el primero, proveer a todo participante del SRM un retiro digno; el segundo, garantizar la solvencia del sistema. Véase, Exposición de Motivos de la Ley Núm. 160 de 2013 (2013) [Parte 3] Leyes de Puerto Rico 1616.

Como se sabe, en AMPR et als. v. Sist. Retiro Maestros V, supra, este Tribunal declaró la inconstitucionalidad de varios artículos de la Ley Núm. 160.[5] Ahora bien, no todas las disposiciones del estatuto fueron objeto de escrutinio en ese pleito. Uno de los que permaneció inalterado fue el Art. 3.5. Mediante esta disposición se eliminó la

---

[5]Para una discusión detallada de los cambios que se introdujeron mediante la Ley Núm. 160 y los fundamentos que me guiaron al coincidir con la determinación de la inconstitucionalidad de varias porciones del estatuto, Véase, AMPR et als. v. Sist. Retiro Maestros V, supra, págs. 890-919 (Opinión de conformidad del Juez Asociado Señor Estrella Martínez).

posibilidad de que un participante del SRM que previamente hubiese acumulado aportaciones en otro sistema público de retiro, pudiese traerlas al SRM según contemplado en la Ley de reciprocidad, Ley Núm. 59 de 10 de junio de 1953, 3 LPRA sec. 797 et seq. (Ley de reciprocidad).[6]

Concretamente en el Art. 3.5 se establece que,

> **A partir del 1ro de agosto de 2014**, **no existirá la reciprocidad de entrada** que establece la Ley [de reciprocidad], **sobre los servicios prestados después del 31 de julio de 2014**, entre el Sistema y los otros sistemas de retiro del Estado Libre Asociado de Puerto Rico, sobre los empleados que cotizan en otros sistemas y pasan a formar parte del Sistema de Retiro para Maestros. Sin embargo, se podrá transferir las aportaciones de los participantes del Sistema de Retiro para Maestros a otros sistemas de retiro del Estado Libre Asociado de Puerto Rico que mantengan sistemas de beneficios definidos y acepten transferencias de entrada a dichos participantes.[7]

Como vemos, del artículo precitado se desprende que la prohibición de la reciprocidad de entrada no es absoluta. Al contrario, surge diáfanamente que la prohibición de este tipo de transferencias es de carácter prospectivo a

---

[6]El propósito principal de la Ley de reciprocidad es garantizar la continuidad de créditos por servicios entre los distintos sistemas de retiro de los empleados públicos. Ello con el objetivo de que ningún participante pierda algún derecho "que tenía reconocido en un sistema de retiro por el mero hecho de que ha pasado a ser participante en otro sistema de retiro gubernamental". Sanfiorenzo v. Adm. Sistemas de Retiro, 138 DPR 94, 101 (1995). Véase, además, Correa Suárez v. Junta de Retiro para Maestros, 88 DPR 590 (1963).

[7](Negrillas y énfasis suplido). 18 LPRA sec. 395d.

servicios prestados **después** del 31 de julio de 2014. Por ende, ante una solicitud de transferencias de aportaciones desde un sistema de retiro hacia el SRM es menester distinguir entre aquellas aportaciones efectuadas con anterioridad a esa fecha y las que son posteriores. Lógicamente, las que se materializaron antes de la fecha límite podrán ser transferidas y las que ocurrieron luego, no.

### C.

Sabido es que la doctrina de revisión judicial dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina. Torres Rivera v. Policía de PR, 196 DPR 606, 625-626 (2016). De esa forma, la Sec. 4.5 de la Ley de procedimiento administrativo uniforme, 3 LPRA sec. 9675, establece el marco en el que ocurre la revisión judicial de las determinaciones de las agencias administrativas.

Ese marco está fundamentado en el principio rector de la razonabilidad, es decir, se examina que no se haya actuado de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción. Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018). En consonancia con lo anterior, los tribunales apelativos estamos facultados a hacer una revisión completa y absoluta con respecto a la corrección de las conclusiones de Derecho

realizadas por las agencias administrativas. Es decir, tales determinaciones pueden revisarse en su totalidad. Por cierto, "**hemos señalado que se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo**". (Negrillas suplidas). Rolón Martínez v. Supte. Policía, supra, pág. 36; Asoc. Fcias. v. Caribe Speciality et al. II, 179 DPR 923, 941 (2010).

Siendo estos los contornos normativos en los que se enmarca esta controversia, procedo a exponer los fundamentos por los cuales hubiese revocado los dictámenes recurridos.

**III**

Según reseñáramos, el Peticionario laboró para la ASR entre el **1 de octubre de 2008 y el 17 de agosto de 2015**. Al día siguiente -esto es, el 18 de agosto de 2015-, inició nuevamente sus labores en el SRM. Subsiguientemente, solicitó que las aportaciones para su retiro acumuladas durante el tiempo que trabajó en la ASR fueran transferidas al SRM. Aunque en un principio ese ente aceptó efectuar lo solicitado, posteriormente lo denegó al concluir que el Art. 3.5 de la Ley Núm. 160, supra, prohibía toda transferencia por razón de que:

> Cualquier empleado que haya pasado de trabajar en un puesto bajo el Sistema del Gobierno a otro bajo el SRM después del 1 de agosto de 2014, **no podrá hacer ningún tipo de transferencia al SRM, ya que a partir de dicha fecha quedó**

**eliminada la reciprocidad de entrada al SRM.**

Usted fue nombrado en el SRM el 18 de agosto de 2015, fecha posterior al término límite de reciprocidad. [Por tanto] sus aportaciones cotizadas bajo la ASR estaban impedidas de poder ser transferidas al SRM. A tales efectos, procederemos con la devolución de las aportaciones a la ASR cotizadas con anterioridad al 18 de [agosto] de 2015 por resultar indebida.[8]

Por su parte, el señor Miranda Santos sostiene en su Petición de certiorari que tanto el organismo administrativo como el Tribunal de Apelaciones erraron al resolver que, por virtud del Art. 3.5 de la Ley Núm. 160, supra, estaba impedido de transferir hacia el SRM todas las aportaciones que acumuló en la ASR durante el periodo del 1 de octubre de 2008 y el 17 de agosto de 2015. Es su contención que los foros recurridos erraron al interpretar el alcance de esta disposición toda vez que la prohibición establecida aplica únicamente sobre los servicios prestados después del 31 de julio de 2014. En ese sentido, argumenta que como su solicitud de transferencia incluía servicios prestados antes y después de esa fecha, lo correcto era hacer la correspondiente distinción para permitir la transferencia únicamente de las aportaciones realizadas con anterioridad a la fecha límite establecida en el Art. 3.5 de la Ley 160, supra. **Le asiste la razón. Me explico.**

---

[8](Negrillas suplidas). Apéndice de la Petición de certiorari, pág. 28.

Como cuestión de umbral, recalco que por tratarse de una revisión administrativa estamos facultados para revisar en su totalidad las conclusiones de Derecho realizadas por la Junta de Retiro. Asimismo, sostengo que no procedía otorgarle deferencia al dictamen administrativo, puesto que no podemos hallar una explicación racional que sustente la razón por la cual el SRM se apartó del lenguaje claro que establece el Art. 3.5 de la Ley Núm. 160, supra.

Ciertamente, el aludido artículo objeto de revisión en esta controversia establece que, a partir de 1 de agosto de 2014, no existiría la reciprocidad de entrada que la Ley de Reciprocidad contempla. Sin embargo, acto seguido se inserta una aclaración de vital importancia: **tal prohibición únicamente recaerá sobre los servicios prestados después del 31 de julio de 2014.**

De hecho, así lo había interpretado el SRM previamente. Según surge del expediente de este caso, la agencia analizó el impacto que tuvo sobre la Ley Núm. 160 nuestra decisión en AMPR et als. v. Sist. Retiro Maestros V, supra. Al discutir el alcance del Art. 3.5, el SRM lo interpretó de forma cónsona con la intención legislativa. **Esto es que, para propósitos de una correcta adjudicación sobre la procedencia de las transferencias de las aportaciones, lo importante es discernir si estas ocurrieron antes o después del 31 de julio de 2014.** Así pues, el documento interpretativo formulado por la propia agencia establece lo siguiente:

> No hubo cambios a lo que establece la Ley 160-2013. Se estableció que no existe reciprocidad entre los Sistemas de Retiro a partir del 1 de agosto de 2014. **Sin embargo, provee para que los participantes puedan transferir las aportaciones de otros Sistemas que tengan acumulados hasta el 31 de julio de 2014**. […].[9]

Es más, para ilustrar su interpretación la agencia utiliza un ejemplo similar al del caso de autos,

> Juan Pérez trabaja en la Universidad de Puerto Rico desde 1980 hasta septiembre de 2014. El 1 de octubre comienza a trabajar en el Departamento como Director Escolar de Escuela. Juan Pérez solicita transferir aportaciones a SRM. **A base de lo anterior el SRM solo aceptará las aportaciones que realizó a su Sistema hasta el 31 de julio de 2014**.[10]

Por todo lo anterior, sostengo que los foros recurridos erraron al denegar una solicitud de transferencias de aportaciones para el plan de retiro amparados únicamente en la primera parte del Art. 3.5 de la Ley Núm. 160, supra. Al contrario, una cabal adjudicación de este tipo de solicitud requerirá distinguir entre aquellas aportaciones que se realizaron con anterioridad al 31 de julio de 2014 y las que ocurrieron con posteridad. Máxime cuando estamos llamados a interpretar las leyes que crean derechos al disfrute de pensiones de forma liberal a favor del beneficiario con el objetivo de propiciar la consecución del propósito reparador

---

[9] (Negrillas y énfasis suplido). Íd., págs. 281-282.

[10] (Negrillas y énfasis suplido). Íd.

que inspiraron su creación. Téngase presente que en este caso el lenguaje del artículo aludido es claro en condicionar la prohibición de reciprocidad de entrada solo en aquellos casos en los cuales las aportaciones a ser transferidas ocurrieran **después** del 31 de julio de 2014.

En definitiva, en lugar de denegar la totalidad de las transferencias solicitadas por el señor Miranda Santos, la agencia administrativa debió efectuar el análisis correspondiente para distinguir las aportaciones que este realizó antes de la fecha límite y las que ocurrieron después. **Al aplicar estos preceptos a los hechos fácticos de este caso, es forzoso concluir que al Peticionario le asistía el derecho a transferir las aportaciones realizadas a la ASR correspondientes al periodo entre el 1 de octubre de 2008 y el 31 de julio de 2014.** Así pues, erró el foro apelativo intermedio al concederle deferencia a una determinación administrativa claramente irrazonable.

**IV**

Por los fundamentos expuestos, reitero que procedía expedir el recurso y resolver que el señor Miranda Santos tiene derecho a que las aportaciones realizadas entre el 1 de octubre de 2008 y el 31 de julio de 2014 sean transferidas al SRM. **En vista de que el criterio mayoritario de una Sala Especial de este Tribunal es renuente a corregir una evidente interpretación errónea del Derecho aplicable, consigno que esta inacción producirá un resultado injusto cuyo efecto**

**nocivo es imponer barreras irrazonables al principio subyacente de todo plan de retiro: garantizar una vida digna una vez el empleado culmine su carrera en el servicio público.**

En el 1993, el señor Miranda Santos comenzó una carrera en el servicio público como Auditor de la Oficina del Contralor de Puerto Rico. En el 2023, la determinación administrativa recurrida contraria a Derecho trastocó irrazonablemente las aportaciones que hizo el Peticionario por décadas. Avalar tal acción no solamente tiene un impacto negativo para el señor Miranda Santos, sino que constituye una carta blanca a favor del Gobierno para mantener en vigor una política pública errada, injusta y contraria a la letra de la ley aplicable.

**Por tanto, disiento.**


                              Luis F. Estrella Martínez
                              Juez Asociado